IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

**REBECKA VIRDEN, on their own behalf and
on behalf of their minor children; SAMANTHA
ROWLETT, on their own behalf and on behalf
of their minor children; NINA PRATER, on their
own behalf and on behalf of their minor children**          **PLAINTIFFS**

vs.                    No. 2:23-cv-2071-PKH

**CRAWFORD COUNTY, ARKANSAS,** *et al,*                     **DEFENDANTS**

### BRIEF IN SUPPORT OF DEFENDANTS'
### MOTION TO DISMISS AND FOR JUDGMENT ON THE PLEADINGS

COME NOW Defendants, Crawford County, Arkansas, County Judge Chris Keith, Interim Library Director Eva White, Quorum Court Members: Robert Kevin Arnold, Lonnie Myers, Morgan R. Morgan, Jason Peppas, Brad Martin, Mark Shaffer, Lonnie Jennings, Tia Woodruff, Jason Cox, Jeff Beaucamp, Craig Wahlmeier, Mitch Carolan, and Roger Atwell, and Library Board Members: Keith Pigg, Collen Hoelscher, Tammara Hamby, Amanda Stevens, and Kaelin Schaper ("Defendants"), all in their official capacities, by and through their undersigned counsel, and for their Motion to Dismiss, pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 12(c) state:

### INTRODUCTION

Plaintiffs filed suit against Defendants alleging violations of their First Amendment rights. *Doc. 7* at ¶29.  Defendants serve as elected and appointed officials in the government of Crawford County, Arkansas.  The basis of Plaintiffs' suit is that the Crawford County Library System moved certain LGBTQ+ themed books from one section of the library to another.  *Id.* at ¶17.  Plaintiffs allege this runs afoul of the First Amendment's right to access and Establishment Clause.

1

However, Plaintiffs' case has two obvious errors—lack of standing and failure to state a claim upon which relief can be granted. *Id.* at ¶29. Thus, Defendants now move to dismiss Plaintiffs' Complaint[1], *Doc. 7*.

## LEGAL STANDARDS

Defendants have answered Plaintiffs' Complaint; therefore, any motion to dismiss for failure to state a claim, pursuant to Rule 12(b)(6), is construed as a motion for judgment on the pleadings under Rule 12(c). *Francis v. Schibbelhut*, No. 2:20-CV-02073, 2020 WL 4741097 (W.D. Ark. Aug. 14, 2020) (Holmes, J.). The standard of review for a 12(c) motion is the same as a pre-answer 12(b)(6) motion. *Id.* The Court accepts Plaintiffs' facts as true, and they must state a plausible claim for relief on the face of those facts. *Turkish Coal. of Am., Inc. v. Bruininks*, 678 F.3d 617, 623 (8th Cir. 2012) (citing *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)).

Defendants also move to dismiss Plaintiffs' Complaint for a lack of standing. For purposes of determining whether Plaintiffs have standing, the Court accepts all factual allegations on the face of the Complaint as true, drawing all reasonable inferences in Plaintiffs' favor. *Turkish*, 678 F.3d at 621; *League of Women Voters of Arkansas v. Thurston*, No. 5:20-CV-05174, 2021 WL 5312640 at *1, 4 (W.D. Ark. Nov. 15, 2021) (Holmes, J.).

## FACTS

Here are the facts, accepted as true from the Complaint with all reasonable inferences drawn in Plaintiffs' favor. The named Plaintiffs—Rebecka Virden, Samantha Rowlett, and Nina Parker—are residents of Crawford County and members of the Crawford County Library System. *Doc. 7* at ¶1. Plaintiffs are suing individually and on behalf of their minor children. *Id*. Some of Plaintiffs' unnamed and unidentified minor children are also library members, while some of the

---

[1] Defendants reference to "Complaint" throughout this motion and brief refers to Plaintiffs' Amended and Substituted Complaint, *Doc. 7*.

2

children use their parents' library card in leu of library membership. *Id.* Plaintiffs complain that the Crawford County Library System and a host of other County officials violated their and their children's First Amendment right to receive information and the First Amendment's Establishment Clause. *Id.* at ¶29. The factual basis for Plaintiffs' constitutional claims centers on the following factual allegations:

First, the Crawford County Library System instructed its various library branches to reassign space on existing shelving in their library and create a new section of books called the "Social Section." *Doc. 7* at ¶22. As a result, some LGBTQ+ books were moved to the newly-created Social Section at various library branches. *Doc. 7* at ¶¶17, 18 & 22.

Plaintiffs provide an example of the Van Buren branch's Social Section in their Complaint. *Doc. 7* at ¶17. As depicted in the example photograph, the Social Section is not in a separate area of the library. Rather, it is located among the various other sections of books, as illustrated by the other books shelved behind and around the Social Section. *Doc. 7* at ¶17. The Social Section is accessible to the general public, just as any other section of the library. As shown in the photo in Plaintiffs' Complaint, there is no gate or physical barrier impeding access to the Social Section. *Doc. 7* at ¶17. There are half-dollar size green labels on the spine of the books placed in the Social Section, but the covers of the books remain visible. *Id.* at ¶17, 22. Thinner children's books such as "Swarice's Big Voice" are on the lower half of the section, accessible by children. *Id.* Thicker books are located at typical eye level of the Social Section. *Id.* The Social Section also includes reminders that, pursuant to general library policy, all children under ten years old must be accompanied by an adult. *Doc. 7* at ¶¶17, 22. In short, the Social Section and the books it contains are just like any other section in the library: unrestricted and accessible to all patrons. *See id.* at

3

¶17. Anyone visiting the library can access books shelved in the Social Section, and anyone with a library card may check out a book shelved in the Social Section.

Second, although all the Social Section books remain accessible to all library patrons, Plaintiffs allege that simply moving them violates their constitutional rights. According to Plaintiffs, the Library and County Officials moved the books because they are "pornograph[ic]" and "expos[e] children to explicit sexual ideas or imagery." *Doc. 7* at ¶23. Plaintiffs also say the County's motives arise from "impermissible religious considerations…its extreme and malevolent view of the Bible, resulting in the County punishing the already marginalized LGBTQ+ community." *Doc. 7* at ¶27. Notably, the Plaintiffs do not allege that the Social Section is an endorsement of a particular "impermissible religio[n]." *See id.*

But even accepting these most favorable facts, Plaintiffs fail to establish standing or state a claim upon which relief can be granted.

## ARGUMENT

Defendants begin by addressing Plaintiffs' shortcomings with standing. Then Defendants address Plaintiffs' failure to state a claim upon which relief can be granted.

### I. Plaintiffs' Fail To Establish Standing

Every litigant in Federal Court must establish Article III standing; it is a "jurisdictional prerequisite." *City of Clarkson Valley v. Mineta*, 495 F.3d 567, 569 (8th Cir. 2007). A litigant must "demonstrate standing for each claim he seeks to press and for each form of relief that is sought" because "standing is not dispensed in gross." *Town of Chester, N.Y. v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017). The core requirement for standing is the existence of an injury-in-fact. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). The other two requirements—causation and redressability—center around injury-in-fact. *Id.*

4

The lack of an injury-in-fact is the deep issue for Plaintiffs' lack of standing as to the First Amendment Claims they seek to press.

### A. Claim I: The First Amendment's Establishment Clause

The U.S. Constitution's Establishment Clause is violated when the government's actions endorse a religious stance that crosses "the line" by not "accor[ding] with history and faithfully reflect[ing] the understanding of the Founding Fathers." *Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407, 2428 (2022) (overturning the *Lemon* endorsement test). *Id.*

A government may cross the line in theory, but a plaintiff in a particular case must still sustain an injury to redress the violation. Typically, plaintiffs can sustain an injury in one of two ways: (1) by showing a "direct and unwelcome personal contact with the alleged establishment of religion," *Red River Freethinkers v. City of Fargo*, 679 F.3d 1015, 1023 (8th Cir. 2012) (internal citation omitted); or (2) by establishing an injury through taxpayer standing. *Minnesota Fed'n of Tchrs. V. Randall*, 891 F.2d 1354, 1358 (8th Cir. 1989) (*per curiam*). Although these areas of potential injury are based on pre-*Kennedy* cases, they do align with *Kennedy* because the Court highlighted that a historical understanding of the Establishment Clause prevents a government from forcing anyone to engage with "religious observance" which would qualify as a direct and unwelcomed contact with religion. 142 S. Ct. at 2429; *Red River*, 679 F.3d at 1023. Nonetheless, Plaintiffs' accepted-as-true facts fail to prove any injury.

**Direct Personal Contact.** Plaintiffs fail to show that accessing the Social Section is a "direct and unwelcomed personal contact with the alleged establishment of religion." *Red River Freethinkers*, 679 F.3d at 1023. A case example from this district is helpful to show what is required of Plaintiffs here.

5

In *American Humanist Ass'n v. Baxter County., Arkansas*, the County erected a Christian nativity scene on the County Courthouse's lawn. 143 F. Supp. 3d 816, 819 (W.D. Ark. 2015). The plaintiff was a Christian but found the nativity display harmful because it gave the "perception that her *government* [had] established Christianity as its preferred religion." *Id.* at 821 (emphasis original).  Judge Brooks found the plaintiff sustained an injury-in-fact where she experienced direct and unwelcomed personal contact with the scene because she did not welcome such an endorsement from the government by and with her religion. *Id.* at 821–22.

But here, Crawford County has made no such physical displays of endorsements to injure Plaintiffs.  As depicted in Plaintiffs' own photo, there are no displays of religious symbology, religious artifacts, or religious figures in the Van Buren Branch's Social Section. *Doc. 7* at ¶17. Plaintiffs do not allege they are forced to make direct or unwelcomed personal contact with any religious display or monument when patronizing the Library System's Social Sections. *See Doc. 7*.  Plaintiffs do not allege the Christian Bible is housed in the Social Sections. *Id.*  Plaintiffs do not allege any of the books in the Social Sections are religious, causing direct and unwelcomed contact with religion. *Id.*  Plaintiffs do not allege that they were forced to checkout a religious book when checking out a book from the Social Section. *Id*.  In fact, Plaintiffs have not alleged any direct or unwelcome contact with religious materials or items in visiting the Social Sections of the Library.  Plaintiffs' distress does not rise to an injury-in-fact.

And as to Plaintiffs' allegations that Defendants were motivated to relocate certain books to the Social Section based on their alleged Christian ideology, that does not chin the Establishment Clause bar.  Instead, Plaintiffs must allege that the resulting Social Section directly subjects them to unwanted religious contact that offends "historical practices and understanding" of the Establishment Clause. *Kennedy*, 142 S. Ct. at 2428.  In *Kennedy*, the Supreme Court recognized

that the plaintiff was "sincerely motivated" by his religion to lead group prayer after a football game. *Id.* at 2422. But his motivations did not affect whether the group prayer offended the Establishment Clause, the violation of the clause rested on the *resulting* group prayer and whether he ever "coerced, required, or asked any student to pray." *Id.* at 2429 (internal quotations omitted). Similarly here, Plaintiffs' allegations as to Defendants' motives (whatever they may be) bear no weight as to answering the question of "does the Social Section coerce or force Plaintiffs to engage with unwanted religious observance?" On these facts, it does not.

**Injury by Taxpayer Standing**. Plaintiffs could establish an injury-in-fact by establishing taxpayer standing. To do so, Plaintiffs mush show: (1) "'a logical link between [his status as taxpayer] and the type of legislative enactment attached'" and (2) "establish a nexus between that status and the precise nature of the constitutional infringement alleged.'" *Stevenson v. Blytheville Sch. Dist. No.* 5, 955 F. Supp. 2d 971, 983–84 (E.D. Ark. 2013) (Baker, J.).

However, Plaintiffs have a threshold problem: Plaintiffs' accepted-as-true facts do not even allege they are Crawford County taxpayers. Plaintiffs and their children allege they are residents, but residency does not establish taxpayer status; even more so for the minor children. *Doc. 7* at ¶1. For Plaintiffs to have any hope in proving taxpayer standing against the County, they must first prove to be a county taxpayer. As said by the Eighth Circuit Court of Appeals: "only a taxpayer really suffers a distinct injury from the improper use of public money in violation of the establishment clause." *Randall*, 891 F.2d at 1358. But even assuming for argument that Plaintiffs are county taxpayers, Plaintiffs' facts are still not enough to establish taxpayer standing.

Taxpayer standing requires an injury resulting from a government's expenditure of tax revenue. *Stevenson*, 955 F. Supp. 2d at 983. Here, that would require Plaintiffs to show the Establishment Clause was violated when: (1) tax money was dispersed to build a religious Social

7

Section for the libraries and to relocate the books to that section and, (2) as a taxpayer, their tax money was used by Crawford County in those actions to support and endorse a religion. A few case examples are helpful to explain why Plaintiffs do not prove either point.

In *Friedmann v. Sheldon Community School District*, non-residents sued a school that was permitting students to read a prayer at a graduation ceremony. 995 F.2d 802, 803. The Eighth Circuit found no violation of the Establishment Clause because plaintiffs made no allegations that money was spent for religious reasons. *Id.* Plaintiffs did not show or allege that "any state money [was] going to the invocation or benediction, which is what they contend violates the Establishment Clause." *Id.*

In *Randall*, plaintiffs sued the State of Minnesota over an act that allowed tax money for public education to go to private religious affiliated colleges. 891 F.2d at 1355. The Eighth Circuit found taxpayer standing for the individual plaintiffs because they challenged the act's expenditure of tax money to private religious schools in violation of the Establishment Clause. *Id.* at 1358, 1360.

In this case, Plaintiffs have not alleged that any County money is being expended to financially support a religious entity. *See Doc. 7.* According to Plaintiffs, all that happened was the County moved books into a different section of the library and labeled it as the Social Section. *See Doc. 7* at ¶¶17, 18 & 22. On the movement of books generally, Plaintiffs have not alleged what County policy or ordinance is rooted in religion or an endorsement of religion. Instead, Plaintiffs cry foul over some of the Defendants' motives. *Doc. 7* at ¶27. Concerning the Social Section, the Social Section is not religious, is not rooted in any particular religion, does not display religious material, and is not sponsored by or in support of a religious organization. It is not the "Social Section presented by and through the First Baptist Church of Fort Smith." It is just the

Social Section of the Crawford County Library System.  Lastly, Plaintiffs make no attempt to show a nexus between the alleged violation of the Establishment Clause and their unalleged status as a taxpayer. *See Doc. 7*.

Plaintiffs are unable to allege a "good-faith pocketbook action" showing that Crawford County spent its tax revenue to support a religion. *Doremus v. Board of Ed. of Borough of Hawthorne*, 342 U.S. 429, 434 (1952).  Thus, they are not granted the luxury of taxpayer standing in this case.

Without injury by taxpayer standing and without a traditional injury-in-fact by unwanted religious contact, Plaintiffs fail to establish standing to assert their Establishment Clause claim against all Defendants.  Consequently, Plaintiffs' Establishment Clause claim must be dismissed for lack of standing.

### B. Claim I:  Restriction on Receiving Information

The First Amendment may (or may not) protect the right to receive information and ideas. *See Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico*, 457 U.S. 853, 866–67 (1982) (plurality opinion). The *Pico* case is the seminal case that potentially established a First Amendment right to receive information.  But the opinion is only a plurality opinion and it "sharply divided the Supreme Court." *C.K.-W. by & through T.K. v. Wentzville R-IV Sch. Dist.*, 619 F. Supp. 3d 906, 913 (E.D. Mo. 2022).  Plurality opinions are only binding on this Court to their "narrowest grounds." *Marks v. United States*, 430 U.S. 188, 193 (1977). Defendants address the issue of narrowest grounds and *Pico*'s application more fully in Part II.A.  But on the facts of *Pico* alone, when a public school restricts that right by blocking access to the information, the school may violate the First Amendment.  *Id.*

Assuming that such a legal basis exists outside the schoolhouse[2], to establish an injury-in-fact Plaintiffs must show that Crawford County has restricted their access to receiving the information contained in its libraries. In *Counts v. Cedarville Sch. Dist.*, the plaintiff student sued her school for requiring parental permission to access and check out the Harry Potter series of books. 295 F. Supp.2d 996, 998 (W.D. Ark. 2003). Judge Hendren ruled that the plaintiff-student had alleged a "sufficient injury" because "she cannot simply walk into the library and [review a passage in one of the books]." *Id.* at 999. The requirements of waiting for a librarian to retrieve the book and obtaining parental consent burdened her right to access the books. *Id.*

Plaintiffs in this case have no such "sufficient injury." Plaintiffs' accepted-as-true facts only recite that they are upset by certain books being housed in the readily accessible Social Section instead of in another section of the library. *See Doc. 7*. Those facts do not show that Plaintiffs have ever been (1) denied access to the Social Section, (2) required to give permission for their minor child to access the books in the Social Section, (3) denied the ability to check out a book from any section at a library, or (4) denied the ability to retrieve a book off the shelves and "review a passage." *See Doc. 7*. As shown by Plaintiffs' own photo, the Social Section is just like any other section of books at a Crawford County Library Branch—accessible by all who visit the library. *Doc. 7* at ¶17.

To the extent that Plaintiffs morph the Library's policy of asking parents to keep track of their children under the age of ten into an unconstitutional restriction, Defendants respond in prevention. First, no named Plaintiff or their minor children are alleged to be less than ten years

---

[2] Defendants will address Plaintiffs lack of legal basis in Part II.A.

of age, nor have Plaintiffs pled that their (alleged) less than ten-year-old child was asked to leave the Social Section or denied a book from the Social Section without a parent present. *See Doc. 7*. Second, even if Plaintiffs articulated an injury on behalf of a ten-year-old or younger minor, no child is barred—procedurally or physically—from accessing any book in the Social Section. *See Doc. 7*. And even if they were, having a physical barrier between minors and materials harmful to minors is not outright unconstitutional. *See Shipley, Inc. v. Long*, 454 F. Supp. 2d 819, 831 (E.D. Ark. 2004) (Judge Eisele ruling that a statute's requirement for physical segregation of certain books was not facially unconstitutional and could be constitutional in some context). However, the Social Section remains open to all patrons and its books available for checkout by anyone with a library card.

Simply put, Plaintiffs' access to the library and its materials remains as it always has been—unrestricted. Plaintiffs fail to establish an actual injury-in-fact for their restrictive access claim and thus lack standing to bring it.

## II. **Failing To State a Claim Upon Which Relief May Be Granted**.

Defendants urge the Court to see that Plaintiffs' lack of standing on the face of their Complaint. But even if this Court finds that Plaintiffs have the requisite standing to sue, Plaintiffs fail to state claims upon which relief can be granted.

### A. *No Claims for Restrictive Access.*

Plaintiffs do not have a legal basis to bring a restrictive access claim nor do the alleged facts support such a claim.

**Legal Basis.** Plaintiffs' claim that Defendants infringed on their First Amendment right to access information, but their claim lacks a sound legal basis. In *Pico*, Justice Brennan penned a plurality opinion that concluded the First Amendment protected the right to receive information

11

within the school setting. 457 U.S. at 867. But that conclusion only holds the support of three justices. It is a 3-to-1-to-1-to-4 decision.[3] Even then, Justice Brennan noted that his ruling is narrowed to the high school setting:

> "In sum, the issue before us in this case is a narrow one, both substantively and procedurally. It may best be restated as two distinct questions. First, does the First Amendment impose any limitations upon the discretion of petitioners to remove library books from the Island Trees High School and Junior High School?
>
> *Pico*, 457 U.S. at 863.

The dissent in *Pico* also supports such a narrow interpretation:

> "It is the very existence of a right to receive information, in the junior high school and high school setting, which I find wholly unsupported by our past decisions and inconsistent with the necessarily selective process of elementary and secondary education."
>
> *Pico*, 457 U.S. at 910 (Justice Rehnquist Dissenting).

*Pico*'s proclamation is only applicable in the "junior high school and high school setting." *See id.* at 872. As the three-justice plurality stated: "In brief, we hold that *local school boards* may not remove books from the school library shelves simply because they dislike the ideas contained in those books." *Id.* (emphasis added).

With plurality opinions like *Pico*, what is binding on any lower court are the "narrowest grounds" that support the judgment from above. *Jones v. Jegley*, 947 F.3d 1100, 1106 (8th Cir. 2020). Federal courts remain divided over what exactly to do with *Pico*, despite the rule of narrowest grounds. *See Wentzville R-IV Sch. Dist.*, 619 F. Supp.3d at 913–14. The Fifth Circuit holds that Justice White's concurrence is the narrowest grounds because it supports the judgment without touching the constitutional ruling. *Muir v. Alabama Educ. Television Comm'n*, 688 F.2d

---

[3] The plurality support for the right to access information is supported by Justices Brennan, Marshall, and Stevens. Justice Blackmun expressly did not join the plurality as to the section containing such a right. Justice Blackmun and Justice White each wrote a separate concurrence. Chief Justice Burger, and Justices Powell, Rehnquist, and O'Conner dissented.

1033, 1045 n.30 (5th Cir. 1982). The First Circuit has taken no position on what grounds are narrowest and instead applies the facts of *Pico* to each case on its factual basis. *Griswold v. Driscoll*, 616 F.3d 53, 56–57 (1st Cir. 2010). The Eighth Circuit has at times followed the First Circuit. *See Turkish*, 678 F.3d at 623–24.

However, the Eighth Circuit has not adopted a formal stance on *Pico*, leaving district courts to their own devices. District Courts in Missouri have read *Pico* in conjunction with *Pratt v. Indep. Sch. Dist. No. 831, Forest Lake, Minn.*, 670 F.2d 771 (8th Cir. 1982). *See L. H. v. Indep. Sch. Dist.*, No. 4:22-CV-00801-RK, 2023 WL 2192234 (W.D. Mo. Feb. 23, 2023). Such a reading has resulted in district courts assuming, without adopting, a First Amendment right to access information because *Pratt* most aligned with Justice Brennan's plurality in *Pico*. *Id.* Judge Hendren of the Western District of Arkansas ruled that *Pico* is applicable to school library cases in determining whether a student suffered an injury for purposes of standing. *Counts*, 295 F. Supp.2d at 998–99. There, Judge Hendren held: "a school library is an 'environment especially appropriate for the recognition of the First Amendment rights of students.'" *Id.* at 999 (citing *Pico*, 457 U.S. at 853).

These varying approaches leave Plaintiffs in this case with a shaky legal basis upon which to bring their restrictive access claim. Plaintiffs' Complaint assumes that the First Amendment provides protection against restrictive access, assumes *Pico* applies outside of the schoolhouse, and assumes their constitutional rights are infringed. *See Doc. 7*. But, Plaintiffs cannot in good faith argue to this Court that, based on any precedent, the U.S. Constitution protects—outright—the right to receive information. Thus, under any set of facts asserted by Plaintiffs, the First Amendment would not be violated because it does not provide the legal protection Plaintiffs assert. Accordingly, Plaintiffs fail to state a constitutional claim upon which relief can be granted.
13

**Factual Basis.** At this stage, even if this Court finds that *Pico* provides a legal basis for the right to access/receive information, Plaintiffs' facts pleaded in their Complaint erode any basis for a claim. Plaintiffs allege that the Crawford County Library moved a handful of (what Plaintiffs describe as) LGBTQ+ themed books to its newly labeled Social Section. *Doc. 7* at ¶¶17, 18 & 22. Plaintiffs' photo of the Social Section from the Van Buren branch shows that the Social Section is placed among all the other sections of books. *Doc. 7* at ¶17. The Social Section and the books it contains remain readily accessible to all patrons. *Doc. 7* at ¶17. Plaintiffs do not allege that books have been removed, placed behind the circulation desk, or covered up. *See id.* Plaintiffs have not alleged that library staff have failed to assist them in locating or checking out any of the books located in the social section. Thus, according to Plaintiffs facts, anyone visiting the library can access its books and anyone with a library card may check out a book.

Precedent confirms the facts pled by Plaintiffs in this case as nonrestrictive. In the guiding case of *Pico*, the school removed books from the library. 457 U.S. at 858, 866, 872. Students were not able to pick the books off the shelf for perusal or check out the books. *Id.* at 858, 866. The Eighth circuit recognizes such a removal requirement to assert a First Amendment Claim. In *Turkish*, the Eighth Circuit dismissed an organization's restrictive access claim because its website was not actually removed from a school's internet system; the site was just labeled as unreliable. 678 F.3d at 624. The Court explained that *Pico* was not instructive nor was there a restriction on access because the complaint contained "no hint" that students were not free to access the site, email material from the site, or "regale passers-by on the sidewalk with quotes from the…website." *Id.* Lastly, the Western District recognizes that the removal of books is necessary to restrict access. In *Counts*, the school removed the Harry Potter books from the library shelves and required the students "to have parental permission to check out the books." 295 F. Supp.2d at 996. The

14

student-plaintiff was not able to readily access the books in question, and instead had to "locate the librarian, perhaps waiting her turn to consult the librarian, then ask to check out the book and wait while the librarian verifies that she has parental permission to do so, before she can even open the covers of the book." *Id.* at 999. These cases all have a common holding: schools removing books equates to restricting access.

Plaintiffs' facts, even accepted as true, do not state a factual basis for a restrictive access claim. Plaintiffs have sued over county libraries, not school libraries like in the precedents above. The books at issue in this case remain in the library and on the shelves, accessible just like the websites in *Turkish*. The books are not behind a circulation desk, as they were in *Counts*. The books remain accessible for anyone to "review a passage," *Id.*, or take them outside and "regale passers-by on the sidewalk." *Turkish*, 678 F.3d at 624. And no patron needs permission to checkout a book from the Social Section. Any book located in the Social Section is available to any patron of the library.

Plaintiffs' facts, even when given the most favorable gloss, do not state a restrictive access claim upon which this Court can grant relief. Plaintiffs' claim should be dismissed for that reason.

    a. **No Claim For Establishment Clause Violations**

**The New Law.** For the past fifty years, Establishment Clause claims were assessed under the *Lemon* test. That changed last year with the Supreme Court's decision in *Kennedy*. Now, whether a plaintiff states an Establishment Clause claim upon which relief can be granted is determined by whether the government's action crosses the line of the "historical practices and understandings" that "faithfully reflect the understanding of the Founding Fathers." *Kennedy*, 142 S.Ct. at 2428.

This recent upheaval in precedent leaves little caselaw to guide this Court. However, the *Kennedy* Court provided some constitutional goal posts. The *Kennedy* Court included examples of infringements under the new test: "mak[ing] a religious observance compulsory," "coerc[ing] anyone to attend church," and forcing citizens to engage in "formal religious exercise[s]." *Id.* at 2429. Previous cases provide some guidance as well. For example, pre-*Kennedy* Establishment Clause cases involved at minimum some "direct and unwelcome personal contact with the alleged establishment of religion." *Red River Freethinkers*, 679 F.3d at 1023. Along with cases where the government spent tax money in support of religiously affiliated organizations. *Randall*, 891 F.2d at 1358 (*per curiam*). The examples form *Kennedy* align closely with these previous cases: showing the government taking some overt step to subject its citizens to religion or use their money to do it. This is now the guiding light for this Court.

**The New Law Applied.** Although the upheaval leaves little guidance other than history and tradition, Plaintiffs fail to state a claim under this new precedent.

First, Plaintiffs provide no allegations of government expenditures to support a religious organization. *See Doc. 7.* Such an allegation is required. *Friedmann,* 995 F.2d at 803. Without expenditures, that avenue for an Establishment Clause claim is easily forestalled.

Second, Plaintiffs' Complaint is devoid of any allegation that Crawford County or any of the Defendants subjected Plaintiffs to direct contact with religion. Plaintiffs allege that Defendants' motives in setting up the Social Section were based on "malevolent view[s] of the Bible." *Doc. 7* at ¶27. Defendants' motives are not its direct actions toward Plaintiffs. Plaintiffs do not allege any fact that could show Defendants forcing Plaintiffs to engage in "formal religious exercise[s]" that are against "historical practices and understandings" *Kennedy*, 142 S.Ct. at 2428.

16

Having to walk to different spot in the library to access certain books is certainly not a religious procession and the Social Section is not an altar.

Lastly, history and tradition are against Plaintiffs. In assessing history and tradition of the Establishment Clause, this Court looks to practices at both the founding and incorporation. *See McDonald v. City of Chicago*, 561 U.S. 742 769–78 (2010). The Clause was incorporated to the states in 1943. *Murdock v. Com. of Pennsylvania,* 319 U.S. 105, 108 (1943). At the founding, in 1943, and every decade in between and after, America has allowed libraries to organize its information in ways those libraries see fit and has permitted restricting access to certain ideas and information. If the Establishment Clause was designed to stop either, it has most certainly failed.

A summary of historical events makes this clear. In the late nineteenth century, both the Dewey Decimal and the Cutter Expansive Classification system were published.[4] Since that time, libraries across America have used such systems to classify books and shelve them in accessible means. Librarians across the country must decide where to house the books inside their libraries. Crawford County Library is no different. It's decision to categorize books and shelve them in one spot versus another does not offend history or tradition of this country.

However, Plaintiffs are likely to cry foul that the movement of books based on alleged religious considerations is against the Establishment Clause. *See Doc. 7* ¶27. Plaintiffs are wrong. For example, religious censorship has been occurring since 1521 in Europe and those ideals followed the Founders to Colonial America, where censorship of idea has been a ubiquitous force throughout history.[5] Perhaps the first attempt at restricting information in America was the passage

---

[4] *See Generally* DANIEL N. JOUDREY, et al., INTRODUCTION TO CATALOGING AND CLASSIFICATION (11th ed. 2015); *See Google LLC v. Oracle America, Inc.*, 141 S. Ct. 1183, 1192 (2021) (recognizing the Dewey Decimal System categorizes books into an accessible system).

[5] Lana E. Levine & Catherine A. Reardon, *A Resurgence of Censorship in the Twentieth Century?: The Ninth Circuit's Response in Planned Parenthood v. Clark County School District*, 7 St. John's J. Legal Comment. 681, 683-687 (1992).

of the Alien and Sedition Act of 1798, where it became a crime for Americans to "print, utter or publish…any false, scandalous, and malicious writing" about the government.[6] Although it may have run afoul of the freedom of speech it did not run afoul of the Establishment Clause.[7] In 1919, the Federal Government's Espionage Act suppressed anti-war sentiments.[8] 1948, New York banned *The Nation* magazine from its public schools due to it criticizing the Roman Catholic Church.[9] Into the 1960s, book banning and book burning with school library books became synonymous with Americana.[10] And yet despite hundreds of years of censorship, banning, and burning, no federal precedent exists to say such actions constitute a violation of the Establishment Clause. When the Clause was ratified, censorship was occurring. When the Clause was incorporated to the States, book banning had and continued to occur. History shows that the Clause was never meant to address censorship or book banning, if so, the Clause has certainly failed. *See Freedom From Religion Found., Inc. v. Mack*, 49 F.4th 941 (5th Cir. 2022) (applying *Kennedy* along with full historical analysis to courtroom prayer and finding no Establishment Clause claim).

And yet, Plaintiffs' case is not even alleging the highwater mark of a book banning. Plaintiffs take issue with book moving. Defendants are book movers, not *removers*. The books alleged in the Complaint are not banned and remain in the libraries, fully accessible by all who visit. History does not accord the Plaintiffs' argument or interpretation of the Establishment Clause. Therefore, pursuant to history, tradition, and *Kennedy*, Plaintiffs fail to state an Establishment Clause claim upon which relief can be granted.

---

[6] *New York Times Co. v. Sullivan*, 376 U.S. 254, 273 (1964).
[7] *Id.* at 276.
[8] *See Schenck v. United States*, 249 U.S. 47 (1919).
[9] Milton, Areopagitica, *School Boards, Schoolbooks and the Freedom to Learn "A Forbidd'n Writing Is Thought to Be A Certain Spark of Truth That Flies Up in the Faces of Them Who Seeke to Tread It Out."*, 59 Yale L.J. 928 (1950).
[10] *Id.* at 939–40, n. 50.

Plaintiffs' Establishment Clause claim fails on its face. Plaintiffs' facts do not cross the line of what history deems acceptable, do not show any forceable or direct contact with religion, nor show any expenditures by Defendants in support of religion. Their claim must be dismissed.

## CONCLUSION

Plaintiffs' case cannot stand. They fail to provide this Court with sufficient facts to show they have been injured. Plaintiffs also fail to state a plausible claim for restrictive access or violations of the Establishment Clause. The law supporting a restrictive access claim is not as robust as Plaintiffs would hope it to be. Nor does Plaintiffs' Complaint allege they have been prevented from accessing the books. *See Doc. 7*. And lastly, the Establishment Clause is now defined by history, and history shows the Establishment Clause has never stopped book censorship, let alone book relocation. Defendants' relocation of books may offend Plaintiffs' personal preferences, but relocation does not run afoul of the Constitution.

WHEREFORE, Defendants pray that Plaintiffs' Complaint, *Doc. 7*, be dismissed with prejudice; that Defendants recover their fees, costs and disbursements incurred in defending this action; and for such other and further relief as the Court may deem just and proper.

Respectfully Submitted,

**PPGMR Law, PLLC**

James D. Rankin III, AR Bar #93197
Forrest C. Stobaugh, AR Bar #2018186
Samuel S. McLelland, AR Bar #2020101
P.O. Box 3446
Little Rock, AR 72203
Telephone: (501) 603-9000
Facsimile: (501) 603-0556
E-mail: Jim@ppgmrlaw.com
　　　　Forrest@ppgmrlaw.com
　　　　Sam@ppgmrlaw.com

*Attorneys for Defendants*