UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

REBECKA VIRDEN; SAMANTHA ROWLETT;
and NINA PRATER, on their own behalf and on
behalf of their minor children                                                                              PLAINTIFFS

v.                                                     No. 2:23-cv-2071

CRAWFORD COUNTY, ARKANSAS;
COUNTY JUDGE CHRIS KEITH in his official
capacity only; QUORUM COURT MEMBERS
ROBERT KEVIN ARNOLD, LONNIE MYERS,
MORGAN R. MORGAN, BRAD MARTIN,
MARK SHAFFER, LONNIE JENNINGS, TIA
WOODRUFF, JASON COX, CRAIG
WAHLMEIER, MITCH CAROLAN, ROGER
ATWELL, JASON PEPPAS, and JEFF
BEAUCAMP in their official capacities only;
LIBRARY BOARD MEMBERS KEITH PIGG,
COLLEEN HOELSCHER, TAMMARA HAMBY,
AMANDA STEVENS, and KALEIN SCHAPE in
their official capacities only; and INTERIM
LIBRARY DIRECTOR EVA WHITE in her official
capacity only                                                                                                DEFENDANTS

**OPINION AND ORDER**

Before the Court are Plaintiffs Rebecka Virden's, Samantha Rowlett's, and Nina Prater's motion for temporary restraining order and preliminary injunction (Doc. 16), brief in support (Doc. 17), and amended and substituted affidavit in support (Doc. 19); Defendants Crawford County Arkansas's, Chris Keith's, Robert Kevin Arnold's, Lonnie Myers's, Morgan R. Morgan's, Brad Martin's, Mark Shaffer's, Lonnie Jennings's, Tia Woodruff's, Jason Cox's, Craig Wahlmeier's, Mitch Carolan's, Roger Atwell's, Jason Peppas's, Jeff Beaucamp's, Keith Pigg's, Colleen Hoelscher's, Tammara Hamby's, Amanda Stevens's, Kalein Schape's, and Eva White's (collectively "Crawford County" or "the County") response in opposition (Doc. 22); and Plaintiffs' reply in support (Doc. 23). Also before the Court are Crawford County's motion to dismiss and

1

for judgment on the pleadings (Doc. 20) and brief in support (Doc. 21), and Plaintiffs' response in opposition (Doc. 24). Also before the Court are Plaintiffs' motion for certain findings (Doc. 25) and brief in support (Doc. 26), and the County's response in opposition (Doc. 32). For the reasons given below, all three motions are DENIED.

**I.     Background.**

According to Plaintiffs' amended complaint, in late 2022 or early 2023 the Crawford County Library System implemented a policy under which its library branches must remove from their children's sections all books containing LGBTQ themes, affix a prominent color label to those books, and place them in a newly-created section called the "social section." Plaintiffs allege this policy was imposed on the Library System by the Crawford County Quorum Court in response to political pressure from constituents who objected, at least partly on religious grounds, to the presence of these books in the children's section. Plaintiffs and their minor children are residents of Crawford County and users of its Library System. On May 26, 2023, Plaintiffs filed this lawsuit against Crawford County, claiming that the aforementioned policy violates the First Amendment to the United States Constitution. In particular, Plaintiffs claim that this policy restricts their First Amendment right to receive information, and that it also violates the Establishment Clause (which prohibits governmental establishment of religion). On July 6, Plaintiffs also filed a motion for preliminary injunction, asking that Crawford County be required during the pendency of this litigation to return to the policy of processing books that it was using in June 2022. A week and a half later, Crawford County filed a motion for judgment on the pleadings. A couple of weeks after that, Plaintiffs filed a motion for this Court to make certain factual findings.

All three of these motions have been fully briefed and are now ripe for decision. The Court will discuss each motion below, in the following sequence: first, Plaintiffs' motion for certain

2

findings; second, Crawford County's motion for judgment on the pleadings; and finally, Plaintiffs' motion for preliminary injunction.

## II. Discussion.

### A. Plaintiffs' Motion for Certain Findings (Doc. 25).

This is not the only lawsuit currently pending in the Western District of Arkansas that concerns children's books in public libraries. In *Fayetteville Public Library et al. v. Crawford County, Arkansas et al.*, Case No. 5:23-cv-5086, a host of public libraries, librarians, library patrons, nonprofits, and booksellers sued various state actors, challenging the constitutionality of Arkansas Act 372 of 2023 ("Act 372"). Section 1 of Act 372 defines a new Class A misdemeanor called "furnishing a harmful item to a minor." Section 5 requires that "[e]ach county or municipal library shall have a written policy for addressing challenged material that is physically present in the library and available to the public," and imposes certain minimum criteria that libraries must incorporate into those policies. The plaintiffs in that case moved for a preliminary injunction prohibiting enforcement of Act 372 during the pendency of their lawsuit, and United States District Judge Timothy L. Brooks granted that motion. *See generally* __ F. Supp. 3d __, 2023 WL 4845636 (July 29, 2023).

Plaintiffs in the instant case contend that when Judge Brooks granted the preliminary injunction in the *Fayetteville Public Library* case, he "made two findings of fact with respect to Crawford County that go to the heart of the dispute in the case at bar." *See* Doc. 25, ¶ 1. Those two findings are:

- According to the Complaint [in the *Fayetteville Public Library* case], Crawford County's library board, whose members are appointed by County Judge Keith, interpreted Section 5 to mean they were permitted to "segregate constitutionally protected materials" on the basis of viewpoint alone.

3

- There is photographic evidence to prove Crawford County has already moved many books from the children's section to a restricted "adults-only" section in keeping with its interpretation of Section 5.

2023 WL 4845636, at *11. Plaintiffs ask this Court to apply those factual findings against Crawford County in this case under the doctrine of offensive nonmutual collateral estoppel. *See* Doc. 25, ¶¶ 2–4.

One of the essential elements of collateral estoppel is that the issue being precluded must have been determined by "a valid and final judgment" in the prior case. *See Turner v. U.S. Dep't of Justice*, 815 F.3d 1108, 1111 (8th Cir 2016). No final judgment has been entered in the *Fayetteville Public Library* case. Judge Brooks entered a preliminary injunction; but an order granting a preliminary injunction "is generally not based on a final decision on the merits and is not a final judgment for purposes of collateral estoppel." *Medtronic, Inc. v. Gibbons*, 684 F.2d 565, 569 (8th Cir. 1982).

Indeed, the findings which Plaintiffs ask us to apply preclusively in this case were inherently provisional, such that giving them preclusive effect here would be inappropriate. Strictly speaking, Judge Brooks did not find that Crawford County's library board interpreted Section 5 a particular way and moved books in accordance with that interpretation. Rather, he found that the complaint in that case *alleged* these facts and that those allegations were supported by photographic evidence. *See* 2023 WL 4845636, at *11. The purpose of making those particular observations was not to establish that the plaintiffs in that case were entitled to injunctive relief, but rather to establish that the plaintiffs had standing to seek injunctive relief in the first place because their claimed injuries were "not speculative." *See id.* Finding that an allegation is not speculative because evidence exists to support it is a very different thing from finding that the allegation is actually true. Therefore, Plaintiffs' motion for certain findings will be denied.

4

    **B.    Defendants' Motion for Judgment on the Pleadings (Doc. 20).**

Crawford County argues that this case should be dismissed for two independent reasons. One is that Plaintiffs lack standing to bring their claims. The other is that Plaintiffs' amended complaint fails to state a claim upon which relief may be granted. The County is wrong on both of these points.

First, with respect to standing—a party who files a lawsuit in federal court bears the burden of showing that it has standing to bring its claims under Article III of the United States Constitution. *Schanou v. Lancaster Cnty. Sch. Dist.*, 62 F.3d 1040, 1045 (8th Cir. 1995). To carry this burden, a plaintiff must show three things: (1) that it suffered an "injury in fact" which was both "concrete and particularized" and "actual or imminent"; (2) that there is a causal connection between the injury it suffered and the conduct of which it complains; and (3) that it is "likely," rather than merely "speculative," that a favorable decision by the court would redress the injury. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). The County contends that Plaintiffs lack standing because the County's actions have not injured them. The Court disagrees.

A plaintiff who brings a claim for a violation of the First Amendment's Establishment Clause has suffered an injury for purposes of standing if he or she has experienced "direct and unwelcome personal contact with the alleged establishment of religion." *Am. Humanist Assoc. v. Baxter Cnty., Ark.*, 143 F. Supp. 3d 816, 821–22 (W.D. Ark. 2015) (quoting *Red River Freethinkers v. City of Fargo*, 679 F.3d 1015, 1022 (8th Cir. 2012)). Importantly, it is not necessary that the plaintiff take offense to the religious views expressed by the display; rather, if upon encountering the display the plaintiff was merely offended by the message that her government endorses or excludes a particular religious viewpoint as opposed to others, then that is sufficient to confer standing. *See id.*

The amended complaint alleges that all three Plaintiffs are "members and users of the Crawford County Library System," and that their minor children "are also users of the Crawford County libraries." *See* Doc. 7, ¶ 1. Their pleadings also allege that the County's library system has segregated children's books with LGBTQ themes onto separate shelves in the adult section of the library and affixed stigmatizing labels to them signaling controversial content, and that the motivation for this policy was at least in part religious. *See id.* at ¶¶ 17–27. Since Plaintiffs are members and users of these libraries, one can reasonably infer from the pleadings that they have directly encountered the shelves at issue here. And Plaintiffs obviously find this practice unwelcome, as they have brought this lawsuit with the goal of ending it. That is sufficient to confer standing upon them to bring their Establishment Clause claim, at least at this early stage of the lawsuit.

As for Plaintiffs' claim that the County's policy restricts their First Amendment right to receive information: the County argues Plaintiffs have not been injured because their access to the books in question has not been restricted. Children are still allowed to roam the adult section, and there are no formal limitations on who may browse or check out the books at issue here. However, this argument confuses restriction with outright prohibition. When a plaintiff shows that her ability to access information has been impeded by state action, however minimally, then that is a sufficiently concrete injury to confer standing for a First Amendment claim. *See, e.g.*, *Counts v. Cedarville Sch. Dist.*, 295 F. Supp. 2d 996, 999–1000 (W.D. Ark. 2003) (citing *Watchtower Bible v. Village of Stratton*, 536 U.S. 150 (2002) (requiring a permit—even one granted without cost or waiting period—as a prior condition on the exercise of the right to speak imposes a burden on speech) and *Lamont v. Postmaster General of the U.S.*, 381 U.S. 301 (1965) (requiring addressee of mail to request its delivery in writing abridges First Amendment rights)). Here, as already

discussed, Plaintiffs allege that the County has removed children's books from the children's sections of its libraries where children and their parents would expect to find them, and has attached stigmatizing labels to them that could subject individuals who browse them or check them out to embarrassment or opprobrium from library staff members or other patrons. This is a sufficiently concrete burden on Plaintiffs' ability to access information to give them standing to bring this lawsuit. *See id.*

To put the matter more succinctly: Plaintiffs have standing to bring both of their First Amendment challenges to the County's policy because one can reasonably infer from the allegations in the amended complaint that Plaintiffs have been directly, negatively, and concretely impacted by the policy. That does not necessarily mean the County's policy violates the First Amendment. But it does mean Plaintiffs have the right to ask this Court to decide whether the County's policy violates the First Amendment.

This brings us to the other prong of the County's motion for judgment on the pleadings, which is their contention that Plaintiffs have not pleaded sufficient facts to show that any First Amendment violation has occurred. Because the County's motion was filed after its responsive pleading, it is styled as a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) rather than as a motion to dismiss under Rule 12(b)(6). However, the legal standard governing those two types of motions is identical. *See Ashley Cnty., Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009).

In ruling on a motion to dismiss, the Court must "accept as true all facts pleaded by the non-moving party and grant all reasonable inferences from the pleadings in favor of the non-moving party." *Gallagher v. City of Clayton*, 699 F.3d 1013, 1016 (8th Cir. 2012) (quoting *United States v. Any & All Radio Station Transmission Equip.*, 207 F.3d 458, 462 (8th Cir. 2000)). "[A]

7

complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Pleadings that contain mere "labels and conclusions" or "a formulaic recitation of the elements of the cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2009). However, "*Twombly* and *Iqbal* did not abrogate the notice pleading standard of Rule 8(a)(2). Rather, those decisions confirmed that Rule 8(a)(2) is satisfied 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Hamilton v. Palm*, 621 F.3d 816, 817 (8th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678). Where the facts alleged, taken as true, "raise a reasonable expectation that discovery will reveal evidence" in support of a plaintiff's claim, the Court should deny a motion to dismiss. *Twombly*, 550 U.S. at 556.

First, with respect to the Establishment Clause claim, it must be noted that—as Defendants acknowledge—there is little useful precedent to guide this Court's analysis. The United States Supreme Court's most recent guidance on such claims amounts to little more than the extremely general and abstract direction that "the Establishment Clause must be interpreted by 'reference to historical practices and understandings.'" *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. __, 142 S. Ct. 2407, 2428 (2022) (quoting *Town of Greece, N.Y. v. Galloway*, 572 U.S. 565, 576 (2014)).[1] In the face of this instruction, the County resorts to arguing that book banning and censorship, for reasons both religious and otherwise, have a centuries-long history in America and the broader

---

[1] In *Kennedy* and the subsequent case of *Groff v. DeJoy*, 600 U.S. __, 143 S. Ct. 2279 (2023), the Supreme Court formally acknowledged what had already been implicit in its Establishment Clause cases for quite some time: that the traditional "*Lemon* test" for evaluating Establishment Clause claims has been abandoned, and that this test's namesake, *Lemon v. Kurtzman*, 403 U.S. 602 (1971), is now abrogated. *See Groff*, 143 S. Ct. at 2289 & n.7 (citing *Kennedy*, 142 S. Ct. at 2427).

Western world.  Plaintiffs, for their part, respond by citing an Establishment-Clause case regarding the teaching of evolution in classrooms, *Epperson v. Arkansas*, 393 U.S. 97 (1968), and a First-Amendment case which never mentions the Establishment Clause, *Pratt v. Independent Sch. Dist. No. 831*, 670 F.2d 771 (8th Cir. 1982).

Neither side's argument regarding the Establishment Clause claim is satisfactory. Plaintiffs' argument simply sidesteps the "historical practices and understandings" analysis altogether.  But the County's argument, which is essentially that the Establishment Clause does not prohibit state-sponsored religious viewpoint discrimination because state actors have been violating the Free Speech Clause for centuries, seems out of step with the *Kennedy* Court's admonition that the First Amendment's Establishment, Free-Exercise, and Free-Speech Clauses "have complementary purposes, not warring ones where one Clause is always sure to prevail over the others." *See* 142 S. Ct. at 2426 (internal quotation marks omitted).  Ultimately, the burden at this stage is the County's to show that Plaintiffs "can prove no set of facts in support of a claim entitling [them] to relief" under the Establishment Clause.  *Young v. City of St. Charles, Mo.*, 244 F.3d 623, 627 (8th Cir 2001); *see also* 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 (3d ed. 2023) ("Ultimately, the burden is on the moving party [under Rule 12(b)(6)] to prove that no legally cognizable claim for relief exists.").  The County has not carried this burden.  Given Plaintiffs' allegations about the religiously-motivated political pressure that accompanied the policy's enactment, the Court believes their Establishment-Clause claim is at least "plausible" and that they have "raise[d] a reasonable expectation that discovery will reveal evidence" in support of it.  *See Twombly*, 550 U.S. at 556, 570.

Turning now to the right-to-access-information claim: the County makes two independent arguments for dismissal of this claim—a legal one, and a factual one.  First, the County argues that

9

the First Amendment does not provide any right to access information, and that to whatever extent such a right exists then it does so only within the context of public *school* libraries (which the Crawford County Library System is not).  This argument concerns how to properly interpret the 1982 United States Supreme Court case of *Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico*, 457 U.S. 853.  Essentially, the argument runs thus: no Supreme Court majority opinion has ever formally recognized a First Amendment right to receive information; and the only Supreme Court plurality opinion to do so was issued in *Pico*, which concerned a school library.

This argument is simply wrong, on two fundamental levels.  First, Supreme Court majorities have in fact repeatedly acknowledged, in a wide variety of contexts, that the First Amendment protects the right to access information.  *See, e.g.*, *Stanley v. Georgia*, 394 U.S. 557, 564 (1969) ("It is now well established that the Constitution protects the right to receive information and ideas.") (collecting cases); *see also Griswold v. Connecticut*, 381 U.S. 479, 482 (1965) ("The right of freedom of speech and press includes not only the right to utter or to print, but the right to distribute, the right to receive, the right to read . . . .").  The precise contours of that right may sometimes be complicated or unclear, but there can be no reasonable debate as to whether the right exists and enjoys First Amendment protection.

Second, although the County is correct that *Pico* dealt with the right to access information in a school library rather than in a library that was open to the general public, this indicates that the right's scope is broad—not narrow.  The Supreme Court has long recognized that the First Amendment presents unique challenges in "the special characteristics of the school environment" because it inevitably comes into tension with "the comprehensive authority of the States and of school officials . . . to prescribe and control conduct in the schools." *See Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506–507 (1969).  The dispute between the Justices which

prevented a majority from being reached in *Pico* was not over whether the right to access information existed at all, but rather over how it should be balanced against the unique pedagogical and disciplinary concerns that are present in a public-school environment. *See, e.g.*, *Pico*, 457 U.S. at 870 (Brennan, J., plurality opinion) ("Petitioners rightly possess significant discretion to determine the content of their school libraries. But that discretion may not be exercised in a narrowly partisan or political manner."); *id.* at 879 (Blackmun, J., concurring) ("[O]ur precedents command the conclusion that the State may not act to deny access to an idea simply because state officials disapprove of that idea for partisan or political reasons. Certainly, the unique environment of the school places substantial limits on the extent to which official decisions may be restrained by First Amendment values. But that environment also makes it particularly important that *some* limits be imposed."); *id.* at 883 (White, J., concurring) (opining that the case should be remanded for factual findings as to what "the reason or reasons underlying the school board's removal of the books" from the school library were); *id.* at 907 (Rehnquist, J., dissenting) ("cheerfully conced[ing]" the plurality opinion's point that school boards may not exercise their discretion to determine the content of their school libraries "in a narrowly partisan or political manner"). Obviously those concerns are not present here, as we are dealing in the instant case with a universally-accessible public library rather than with a school library. So *Pico* is largely inapposite, and it certainly does not stand for the restrictive proposition that the County advances.

      The County's factual argument for dismissal is more tenable than its legal one, but nevertheless it is ultimately unpersuasive at this stage of the litigation. The County contends that even if there is a right to access information, Plaintiffs have not been deprived of that right because the books in question have not actually been removed from any libraries. However, this argument suffers from a similar problem as one of the County's arguments about standing: it overlooks that

there are other ways a person can be deprived of access to information besides outright removal of the information in question. For example, in the previously-mentioned case of *Counts*, which involved a school library, the books in question had not been completely removed from the library but students were required to obtain parental permission before checking them out or browsing through them. *See* 295 F. Supp. 2d at 1002. Nevertheless, the *Counts* court found that "the stigmatizing effect of having to have parental permission to check out a book constitutes a restriction on access" for First Amendment purposes. *Id.* The court further added that "the fact that [a student] cannot simply go in the library, take the books of the shelf and thumb through them—perhaps to refresh her mind about a favorite passage—without going through the permission and check-out process is a restriction on her access." *Id.*

As already discussed above, Plaintiffs have alleged that the County removed children's books from the children's section to the adult section for religious reasons, and placed conspicuous colored labels on these books identifying them as containing culturally controversial topics. Accepting these allegations as true and making all reasonable inferences in Plaintiffs' favor, *Gallagher*, 699 F.3d at 1016, this is sufficient to state a "plausible" claim that the County has restricted their access to information for political or partisan motives, *Iqbal*, 556 U.S. at 678, and which raises "a reasonable expectation that discovery will reveal evidence" in support of Plaintiffs' claim, *Twombly*, 550 U.S. at 556. That is all Plaintiffs need to show in order to avoid dismissal at this early stage. Therefore, the County's motion for judgment on the pleadings will be denied.

  C.  **Plaintiffs' Motion for Preliminary Injunction (Doc. 16).**

As previously mentioned, on July 6 Plaintiffs filed a motion for preliminary injunction, asking that Crawford County be required during the pendency of this litigation to return to the policy of processing books that it was using in June 2022. Requests for temporary restraining

12

orders ("TRO") and preliminary injunctions are evaluated under the same standard, *see Tumey v. Mycroft AI, Inc.*, 27 F.4th 657, 665 (8th Cir. 2022), which consists of the four so-called "*Dataphase* factors": "(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Dataphase Sys., Inv. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc). The movants (here, Plaintiffs) have the burden of establishing that injunctive relief is proper. *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003). However, "[t]he balance-of-harms and public-interest factors merge when the Government—or, in this case, a state official in his official capacity—is the nonmoving party." *Eggers v. Evnen*, 48 F.4th 561, 564–65 (8th Cir. 2022) (internal quotation marks omitted). While no single factor is dispositive, relief will be denied if irreparable harm is not shown.

Although the Federal Rules of Civil Procedure require courts to conduct expedited hearings on motions for preliminary injunctions when a TRO has already been entered without notice to the opposing party, *see* Fed. R. Civ. P. 65(b)(3), they do not expressly require courts to hold hearings on motions for preliminary injunctions that are denied when, as here, no TRO has been entered. If the written record makes clear that the movant is not entitled to the requested relief, then no hearing is necessary. *See* Fed. R. Civ. P. 78(b); *see also* 11A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2949 (3d ed. 2023); *cf. Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994) (affirming denial of motion for preliminary injunction that was made without a hearing). Here, the Court concludes that no hearing is necessary because, even assuming for the sake of argument that Plaintiffs have suffered irreparable harm, *see Elrod v. Burns*, 427 U.S. 347, 373–74 (1976), and that they have at least a "fair chance" of succeeding on the merits, *Jet Midwest Int'l Co., Ltd. v. Jet Midwest Grp., LLC*, 953 F.3d 1041, 1044–45 (8th Cir. 2020), the

13

balance of harms and public interest weigh overwhelmingly against granting the particular type of injunctive relief that Plaintiffs have requested here.

The amended complaint's prayer for relief asks that the Crawford County Library System be ordered "to restore and maintain its books and future acquisitions to the same administrative controls and processes as they existed in June 2022." (Doc. 7, p. 10). Plaintiffs' motion makes a slightly different request, asking that the Defendants be ordered to "return the Crawford County Library System method of cataloging, categorizing, labeling, and locating books to be the same methods in use as of June 2022." (Doc. 16, ¶ 13). But regardless of which request one considers, these proposals are neither specific enough nor narrowly tailored enough to avoid grave problems with respect to the merged *Dataphase* factors of the public interest and the state of balance between Plaintiffs' irreparable harm and the injury that granting the injunction will inflict on other parties litigant.

For one thing, the Court has not been presented with any evidence as to what the Crawford County Library System's "administrative controls and processes" were in June 2022, nor what its "method of cataloging, categorizing, labeling, and locating books" was at that time. Thus the Court has no basis for concluding that the Library's June 2022 method or process for handling books offended the Constitution any less than the current one does. However, if this were the only problem, then perhaps Plaintiffs would yet be able to carry their burden at an evidentiary hearing on their motion.

But there is also a much deeper problem, which is that Plaintiffs' proposals would essentially freeze in perpetuity the Library's method for processing *all* types of books—not only children's books relating to LGBTQ topics. The Court does not see any reason, on the record before it, why it should curtail the Library's discretion in processing books on such disparate topics

as caring for houseplants, playing chess, or mystery novels. Furthermore, the requested injunctions are so vague and general that they could potentially prevent the Library from altering these processes even for reasons that could be perfectly benign, prudent, and constitutionally inoffensive. For example, the Court has no idea whether the Library might wish someday to reduce the period of time for which especially popular books may be checked out, or to relocate some especially popular category of books to an area of a building that can more easily accommodate heavy foot traffic; but the Court sees no good reason to enter an injunction that could reasonably be construed as restricting the Library's ability to make such harmless and even beneficent (and constitutionally irrelevant) decisions. On the other side of this balance, the Court observes that under the *status quo* and in the absence of any preliminary injunctive relief, Plaintiffs do still have the ability to browse and check out the books in question while this litigation is pending.[2] Accordingly, the Court finds that Plaintiffs have not carried their burden of showing the injunctive relief is appropriate at this time. Therefore their motion will be denied.

To be clear, the Court is not saying it will be impossible for Plaintiffs to show their entitlement to injunctive relief at some later stage of this case, nor is the Court saying it believes Plaintiffs cannot prove their constitutional rights have been violated. The Court is simply saying that if Plaintiffs ultimately prove a violation of their constitutional rights, then they will need to request injunctive relief that is much more narrowly tailored to remedying the harms they have suffered than the relief which was requested in their amended complaint and in their motion. Crafting appropriately tailored relief will require careful consideration that is informed by facts

---

[2] The Court would emphasize, again, that the fact Plaintiffs still maintain some degree of access to the books in question does *not* mean Plaintiffs have suffered no injury for purposes of standing, or that no First Amendment violation has occurred. Those are different questions from the present task, which is to *balance* Plaintiffs' harm in the absence of an injunction against the harms that granting the requested injunction would inflict on others.

gleaned through discovery. The Court's denial of Plaintiffs' request for preliminary injunctive relief will not prevent it from granting permanent injunctive relief at the summary-judgment or post-trial stage if the evidence shows such relief is warranted. *See Travelers Ins. Co. v. Westridge Mall Co.*, 826 F. Supp. 289, 293 n.2 (D. Minn. 1992) (citing *Berrigan v. Sigler*, 499 F.2d 514 (D.C. Cir. 1974)).

### III. Conclusion.

IT IS THEREFORE ORDERED that Plaintiffs' motion for temporary restraining order and preliminary injunction (Doc. 16), Defendants' motion to dismiss and for judgment on the pleadings (Doc. 20), and Plaintiffs' motion for certain findings (Doc. 25) are all DENIED.

IT IS SO ORDERED this 12th day of September, 2023.

/s/ P. K. Holmes, III
P.K. HOLMES, III
U.S. DISTRICT JUDGE