# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF ARKANSAS
# FORT SMITH DIVISION

**REBECKA VIRDEN, et al,**                                    **PLAINTIFFS**

v.                      Case No. 2:23-cv-02071-PKH

**CRAWFORD COUNTY, ARKANSAS,**
**et al,**                                                    **DEFENDANTS**

## SECOND AMENDED AND SUBSTITUTED COMPLAINT

COMES NOW, Plaintiffs, by and through their attorneys, Terrence Cain and Brian Meadors, and state:

This matter arises from Crawford County's unlawful censorship of materials in the county libraries.

### Parties

1. Plaintiffs Rebecka Virden, Nina Prater, and Samantha Rowlett are residents of Crawford County, Arkansas, and members and users of the Crawford County Library System. Their minor children are also users of the Crawford County libraries; some of the children have their own membership, some use their parents' membership.

2. Defendant Crawford County is a political subdivision of the State of Arkansas and is within the Fort Smith District of the U.S. District Court for

the Western District of Arkansas.

3. Crawford County's chief executive is County Judge Chris Keith. He is being sued in his official capacity only.

4. Crawford County's Quorum Court is comprised of these thirteen justices of the peace, sued in their official capacity only: Robert Kevin Arnold, Lonnie Myers, Morgan R. Morgan, Jayson Peppas, Brad Martin, Mark Shaffer, Lonnie Jennings, Tia Woodruff, Jason Cox, Jeff Beauchamp, Craig Wahlmeier, Mitch Carolan, and Roger Atwell.

5. Crawford County has a county library pursuant to Title 13, Chapter 2, Subchapter 4 of the Arkansas Code.

6. The Crawford County Library System interim director is Eva White. She is being sued in her official capacity only.

7. The Crawford County Library has a library administrative board. Under Ark. Code Ann. § 14-14-705(b)(2), "…[a]s to actions of tort, the [library] board shall be considered as an agency of the county government and occupy the same status as a county."

8. The Crawford County Library Board members are: Keith Pigg, Kayla Rich, Tammara (Tammi) Hamby, Robby Dyer, and Kaelin Schaper. They are being sued in their official capacity only.

9. Collectively, the Defendants will be referred to as Crawford County or the County.

## Subject Matter Jurisdiction

10. This Court has subject matter jurisdiction under 28 USC §§ 1331, 1343, as this is a suit bringing a claim under 42 USC § 1983.

## Venue and Personal Jurisdiction

11. Venue is proper under 28 USC §§ 1391(b)(1) and (b)(2), as at least one of the Defendants reside (or are located) in the District and the actions giving rise to this suit occurred in the District.

12. Personal jurisdiction is proper because all Defendants are residents of (or located in) the Western District of Arkansas.

## Facts

13. Under Arkansas law, the Crawford County county judge appoints, and the quorum court confirms, the Crawford County Library Board. Ark. Code Ann. § 14-14-705 (b)(2)(D).

14. A condition precedent to appointment as a county librarian is the recommendation of the county library board.

15. A public library like the Crawford County library system is a "public forum" as that term of art is used in First Amendment jurisprudence.

16. Under Ark. Code Ann. § 13-2-402, the county librarian "shall conduct the library according to the most acceptable library methods."

17. In late 2022, early 2023, the Crawford County Quorum Court began a series of actions intended to, and resulting in, the stigmatization of certain books by placing a prominent color label on them and moving the books to a separate "social section." The Van Buren Public Library's "social section" is shown here:



*Virden, v. Crawford County — 2nd Am. Complaint, page 4 of 13 plus Exhibits A and B*

18. The "social section" contains books for all ages but have this common theme: the books create, for Crawford County, the "discomfort and unpleasantness that... accompan[ies] an unpopular viewpoint."[1]

19. Illustrative of the Defendants' motivations for removing the books is a letter from Tammara (Tammi) Hamby, now a member of the Crawford County Library Board.

20. Tammi Hamby's letter reads, in all meaningful respects, as follows:

> To: Crawford County Pastors
>
> Re: public library LGBTQ children's books
>
> As I am sure you have heard there was a display of children's books aimed at children 10 and under purchased and displayed at our local libraries focusing on alternative lifestyles. The only reason to do this is grooming a generation of children to feel this is normal and an accepted way of life. These children are too young to make those decisions and it should be left solely up to the parents what they want their child to be taught concerning these issues.
>
> A group of concerned citizens attended the last quorum court meeting on 12/19/22 and it appears to have been a success. There was a tentative agreement to remove the offensive books from the

---

[1] *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 509 (1969).

children's section in the library and to work on a permanent solution to the problem.

There have been several resignations of the county library board since the meeting so please pray that the right people are appointed to those positions by our incoming county Judge Chris Keith. Please keep him in your prayers as his tenure starts with this significant conflict amongst his constituents.

The battle is not over and we need your help. There is a scheduled library board meeting on Tuesday the 10th of January at 4:30 pm in the public library building here in Van Buren. We need as many people who can to show up with us to make sure the offensive and harmful children's books are removed.

There have been several constructive suggestions regarding these books and others like them in the library and the library director Deidre Grzymala seems amenable to negotiating.

A large supportive contingent in the meeting would speak volumes to the leadership regarding the importance of protecting our children. We are asking you to ask your congregation to attend the next library meeting January 10, 2023 at 4:30 p.m.

We hope to see you there, Dr. Jeff and Tammi Hamby

21. The "tentative agreement" was in actuality the Quorum Court engaging in viewpoint discrimination by requiring its library board and librarian to label and sequester books based on their content.

22. The Quorum Court's direction to label and sequester the books was admitted by Tammi Hamby and the then-librarian Deidre Gryzmala in the Jan 10, 2023, Crawford County Library Board meeting:

> **Tammi Hamby**  1:13:48
> Ok, last item on the agenda. Deidre, you're going to speak of the compromise with the Quorum Court?
>
> **Deidre Gryzmala**  1:13:51
> Yes. Okay, so the quorum court meeting was on December 19. Per the quorum court, we have reached a compromise about the LGBTQ books in the library system. Each branch has moved all of the LGBTQ kids books into a new section, so they have their own section. It is within the adult section, which we are calling "S" for social. They are a separated collection in the catalog. They were moved to the adult section and there and if there are any books that we missed, just alert the staff, and we can get it switched over. We also put color label covers on the books for staff so that books do not get shelved in the wrong area. When the staff person sees the label, they know that it'll go in this separate section. Every branch has already moved all their books over and we also place signs in this area and other areas of the library that say children 10 and under must be accompanied by an adult or guardian in the library at all times, which this statement is also in our policy. And I also like to point out that in order for a child, anyone under 18, to get a library card, their parent or guardian has to give them consent and sign for their card.

23. Other proffered reasons for singling out these books and making them more difficult—and more stigmatizing—to read is that the books are "pornography," or "exposing children to explicit sexual ideas or imagery."

24. To be clear, none of these books could be fathomably be accused of "grooming," "pornography," or "exposing children to explicit sexual ideas or imagery."

25. For example, the "social section" contains *Uncle Bobby's Wedding, Cinderelliot, A Scrumptious Fairytale, and The Big Book of Pride Flags*.

26. These books are wholly appropriate for placement in the children's section of a public library.

    a. *Uncle Bobby's Wedding*

        Goodreads description is "Bobby and Jamie are getting married, but Bobby's niece Chloe is worried that she won't be his favorite person anymore. Will Uncle Bobby still think she is special? Sarah Brannen's warm story is set in an alternative family as Uncle Bobby marries his boyfriend. Uncle Bobby's Wedding embraces Bobby's relationship with Jamie, but keeps its focus where it truly belongs: on an uncle and niece's love for each other."

    b. *Cinderelliot, A Scrumptious Fairytale*

The book retells the Cinderella story, but has gay characters.

c. *The Big Book of Pride Flags*

Goodreads describes this book as having "fun facts, simple explanations and a short history of each flag accompanying beautiful illustrations, children will uncover the history of Pride and be introduced to different genders and sexual orientations. There's also a blank Pride flag design at the back of the book so that children can create their very own Pride flag!"

The County's censorship of *Pride Flags* showcases that the censorship has nothing to do with "grooming," "pornography," or "exposing children to explicit sexual ideas or imagery." <u>This is a book about flags and the LGBTQ+ community</u>. Crawford County censors the group because of its policy to target, stigmatize, silence, and hate LGBTQ+ people and their ideas.

27. Crawford County's censorship of the "Social Section" books arises from impermissible religious, sectarian considerations, resulting in the County punishing the already marginalized LGBTQ+ community.

28. Arkansas law requires state and regional librarians to have degrees from "an accredited American Library Association program." Ark. Code Ann.

§§ 13-2-204(b), 13-2-905(c).

29. Arkansas law does not have an educational requirement for county librarians, but does require that libraries be operated in the "most acceptable manner." Ark. Code Ann. § 13-2-402.

30. These legal requirements are consistent and can be read together. A librarian operating a library consistently with required training in "an accredited American Library Association program" is operating a library in an "acceptable manner."

31. The American Library Association has addressed the issue of library policies for over eighty years. The ALA first adopted its Bill of Rights in 1939, focusing on unbiased book selection, a balanced collection, and open meeting rooms. Over time, the ALA Bill of Rights evolved to encompass intellectual freedom and freedom to receive information.

32. A copy of the ALA's Bill of Rights is attached as Exhibit A.

33. The actions of the County with regard to its library are inconsistent with all seven policies of the ALA's Bill of Rights.

34. The ALA developed several additional documents interpreting its Bill of Rights in certain contexts. One of those documents concerns how the Bill of Rights should be applied to minors. The interpretation confirms that

Crawford County Library's actions are contrary to the ALA Bill of Rights by

- Denying minors equal and equitable access to library resources
- Restricting access to, and use of, library resources, based solely on the chronological age, apparent maturity, educational level, literacy skills, emancipatory or other legal status of users
- Limiting the selection and development of library resources simply because minors will have access to them.
- Assuming the role of parents or the functions of parental authority.

35. The American Library Association and comparable organizations in Canada and the United Kingdom have endorsed the Cataloguing Code of Ethics.

36. A copy of the Cataloging Code of Ethics is attached as Exhibit B.

37. Crawford County Library's actions implicate ethical principles 1, 2, 3, 6, and 10 of the Code:

1. We catalogue resources in our collections with the end-user in mind to facilitate access and promote discovery.

2. We commit to describing resources without discrimination whilst respecting the privacy and preferences of their associated agents.

3. We acknowledge that we bring our biases to the workplace; therefore, we strive to overcome personal, institutional, and societal prejudices in our work.

6. We take responsibility for our cataloguing decisions and advocate for transparency in our institutional practices and policies.

10. We work with our user communities to understand their needs in order to provide relevant and timely services. The Defendants' actions have resulted in the library not being administered in accordance with the First Amendment, Arkansas law, acceptable library methods, nor in a manner consistent with the American Library Association's policies and policies that the ALA endorses.

## Causes of Action

38. Defendants' actions violate 42 USC § 1983 and the First Amendment, as applied to the states by the 14th Amendment. Defendants' actions restrict the Plaintiffs' right to receive information.

## Prayer

WHEREFORE, Plaintiffs pray that the Court:

- order the Crawford County Library System to operate in a manner consistent with the Cataloging Code of Ethics and the American Library Association's Bill of Rights,
    - for costs,
    - for attorney's fees, and

- for such other relief as allowed by law.

| /s/ Terrence Cain | /s/ Brian Meadors |
|---|---|
| Terrence Cain, Ark. Bar # 99128<br>Attorney for Plaintiffs<br>208 Brown Street<br>Little Rock, AR 72205-5841<br>501-952-8421<br>terrencecain@windstream.net | Brian Meadors, Ark. Bar # 2001186<br>Attorney for Plaintiffs<br>1930 W. Oak Shadows Cir<br>Memphis, TN 38119<br>980-867-1371<br>brianmeadors@gmail.com |

# Library Bill of Rights

The American Library Association affirms that all libraries are forums for information and ideas, and that the following basic policies should guide their services.

I. Books and other library resources should be provided for the interest, information, and enlightenment of all people of the community the library serves. Materials should not be excluded because of the origin, background, or views of those contributing to their creation.

II. Libraries should provide materials and information presenting all points of view on current and historical issues. Materials should not be proscribed or removed because of partisan or doctrinal disapproval.

III. Libraries should challenge censorship in the fulfillment of their responsibility to provide information and enlightenment.

IV. Libraries should cooperate with all persons and groups concerned with resisting abridgment of free expression and free access to ideas.

V. A person's right to use a library should not be denied or abridged because of origin, age, background, or views.

VI. Libraries which make exhibit spaces and meeting rooms available to the public they serve should make such facilities available on an equitable basis, regardless of the beliefs or affiliations of individuals or groups requesting their use.

VII. All people, regardless of origin, age, background, or views, possess a right to privacy and confidentiality in their library use. Libraries should advocate for, educate about, and protect people's privacy, safeguarding all library use data, including personally identifiable information.

Adopted June 19, 1939, by the ALA Council; amended October 14, 1944; June 18, 1948; February 2, 1961; June 27, 1967; January 23, 1980; January 29, 2019.

Inclusion of "age" reaffirmed January 23, 1996.

Although the Articles of the *Library Bill of Rights* are unambiguous statements of basic principles that should govern the service of all libraries, questions do arise concerning application of these principles to specific library practices. See the documents designated by the Intellectual Freedom Committee as Interpretations of the Library Bill of Rights (http://www.ala.org/advocacy/intfreedom/librarybill/interpretations).

## ALA Bill of Rights 00001

# CATALOGUING CODE OF ETHICS

Part 1 - Introduction

a. Background

The Cataloguing Code of Ethics was created by the Cataloging Ethics Steering Committee, consisting of members from cataloguing communities in the United States, Canada, and the United Kingdom, with the assistance of Working Group members from the international cataloguing community (see membership lists at the end of this document).

This effort to produce a cataloguing ethics document is in response to a clear interest and need for direction on cataloguing ethics expressed through Cataloging and Metadata Management Section (CaMMS) Forums at American Library Association (ALA) Midwinter Meeting and Annual Conference in 2017 and 2018. The CaMMS Executive Board formed the Cataloging Ethics Steering Committee to create a dynamic document on cataloguing ethics (defined in section b. of the *Introduction*) that embodies the collective experiences and wisdom of the cataloguing community of practice. The completed document would consist of ethical statements based on principles and values identified by the Cataloging Ethics Steering Committee and the Working Groups, with guidance and examples of best practice, that can be shared across the cataloguing community.

The six-member Cataloging Ethics Steering Committee includes representatives from CaMMS, the Metadata and Discovery Group (MDG) (formerly Cataloguing and Indexing Group (CIG)) of the Chartered Institute of Library and Information Professionals (CILIP) in the United Kingdom, and the Cataloguing and Metadata Standards Committee (CMSC) of the Canadian Federation of Library Associations-Fédération canadienne des associations de bibliothèque in Canada. Work on the cataloguing ethics document began in February 2019, culminating in the release of a first draft Cataloguing Code of Ethics in June 2020 and a second draft in August 2020. The final version of the document was completed in January 2021.

Cataloging Ethics Steering Committee website:
https://sites.google.com/view/cataloging-ethics/home

b. Definitions

The term *cataloguing ethics* is defined as a set of principles and values that provide an intentional decision-making framework for those who work in cataloguing or metadata positions.

A subset of critical librarianship, *critical cataloguing* focuses on understanding and changing how knowledge organisations codify systems of oppression.

1

**Cataloguing Code 00001**

The term *cataloguer* is used as shorthand for referring to anyone involved in cataloguing and metadata work.

c. Scope

As cataloguers, we have significant influence over how information resources are represented through the choices we make. This ethics document provides a framework for approaching cataloguing work that will be a useful tool for practitioners, employers, standards' developers, vendors, students, and educators when ethical situations arise.

Metadata creation is an ongoing process involving work that is wide-ranging, collaborative, and in a constant state of change. Tension between change and status quo creates opportunity to confront ethical issues within our community of practice.

Cataloguing standards and practices are currently and historically characterised by racism, white supremacy, colonialism, othering, and oppression. We recognise that neither cataloguing nor cataloguers are neutral, and we endorse critical cataloguing as an approach to our shared work with the goal of making metadata inclusive and resources accessible. To create systemic change, cataloguers require institutional support. We accept that every workplace is different, and responses to ethical situations are necessarily framed by those local contexts.

We acknowledge systemic barriers to inclusion and recognise that while individual ethical practices are essential, they are not sufficient. The ethical statements listed in Part 2 are intended to inform our professional practice and provide ethical guidance. The statements are based upon fundamental principles and values in cataloguing work, identified by the Cataloging Ethics Steering Committee and the Working Groups:

- Access to resources and metadata
- Acknowledging bias
- Advocacy
- Collaboration
- Critically applying standards
- Diversity, equity, and inclusion
- Education and training
- Respect for agent privacy and preferences
- Responsibility and transparency
- Understanding and meeting user needs

A separate document will contain case studies that further illustrate the statements by showing how colleagues have negotiated or could negotiate ethical issues.

2

**Cataloguing Code 00002**

## Part 2 - Statements of Ethical Principles

We will use these ethical statements, listed here in no particular order of importance, to guide and improve our cataloguing practice:

1. We catalogue resources in our collections with the end-user in mind to facilitate access and promote discovery.

2. We commit to describing resources without discrimination whilst respecting the privacy and preferences of their associated agents.

3. We acknowledge that we bring our biases to the workplace; therefore, we strive to overcome personal, institutional, and societal prejudices in our work.

4. We recognise that interoperability and consistent application of standards help our users find and access materials. However, all standards are biased; we will approach them critically and advocate to make cataloguing more inclusive.

5. We support efforts to make standards and tools financially, intellectually, and technologically accessible to all cataloguers, and developed with evidence-based research and stakeholder input.

6. We take responsibility for our cataloguing decisions and advocate for transparency in our institutional practices and policies.

7. We collaborate widely to support the creation, distribution, maintenance, and enrichment of metadata in various environments and jurisdictions.

8. We insist on diversity, equity, and inclusion in the workplace. We promote education, training, equitable pay, and a fair work environment for everyone who catalogues so that they can continue to support search and discovery.

9. We advocate for the value of cataloguing work within our organisations and with external partners.

10. We work with our user communities to understand their needs in order to provide relevant and timely services.

*Final version - January 2021*
*Updated in September 2022 to correct dates in the second paragraph of the Introduction*

**Cataloguing Code 00003**