UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

REBECKA VIRDEN, et al,            PLAINTIFFS

v.            Case No. 2:23-cv-02071-PKH

CRAWFORD COUNTY, ARKANSAS, et al,            DEFENDANTS

## THE PLAINTIFFS' RESPONSE TO THE DEFENDANTS' SECOND MOTION FOR JUDGMENT ON THE PLEADINGS

### Introduction

After the Plaintiffs filed their First Amended Complaint, the Defendants moved to dismiss. The Court denied that motion, but noted that the relief the Plaintiffs sought was "vague and general" and needed to be "narrowly tailored.. [and] informed by facts gleaned through discovery."[1]

Mindful of the Court's concerns, the Plaintiffs amended their complaint by adding background and a proposed, more narrowly tailored request for relief. The Defendants' response is to complain that the Plaintiffs' request for relief is too detailed.

---

[1] Doc. 36 at pp. 15-16.

## 1. The Defendants' Argument § I.A, Injury-in-Fact

The Defendants again argue that the Plaintiffs "lack [an] injury."[2]

The only material difference between the First and Second Amended Complaints is: (1) the addition of factual allegations, (2) a more specific request for relief, and (3) narrowing the cause of action to only a First Amendment Right to Receive Information claim.

This Court previously found that the Plaintiffs' First Amended Complaint's facts adequately pleaded an injury. Because the First Amended Complaint's factual allegations are a subset of the Second Amended Complaint's factual allegations, the result should be same. As the Court held, when it comes to injury, the Defendants' legal argument is "simply wrong" and the factual argument is "unpersuasive."[3]

## 2. The Defendants' Argument § I.B, Lack of Redressability

The Defendants' lack of redressability argument relies on misstated facts and law.

---

[2] Doc. 43 at 6.

[3] Doc. 36 at 10-12. The balance of Defendants' section I.A. is hard to follow. It seems to say that because the relief sought is different, that affects the injury analysis. But injury and relief are two different things. When it comes to injury, the Plaintiffs have adequately pleaded that their First Amendment Right to Receive Information has been materially impaired by the Defendants' content discrimination, viewpoint discrimination, or both. *See* Court's Order at Doc. 36.

## 2.1 The Redressability Argument Relies on Incorrect Facts

The Defendants claim:

> ...the Crawford County Library System's use of Social Sections already complies with ALA Bill of Rights, which provides that material should not be excluded or censored, material should be presented on all viewpoints, and libraries should not discriminate.[4]

During a trial, the Defendants could attempt to make that argument. But this case is not at the trial stage, it is at the pleadings stage. "In ruling on a motion to dismiss, the Court must 'accept as true all facts pleaded by the non-moving party and grant all reasonable inferences from the pleadings in favor of the non-moving party.'"[5] The Plaintiffs' Second Amended Complaint states the opposite of what the Defendants' motion to dismiss claims:

> The actions of the County with regard to its library are inconsistent with all seven policies of the ALA's Bill of Rights… Crawford County Library's actions are contrary to the ALA Bill of Rights … The Defendants' actions have resulted in the library not being administered in accordance with … American Library Association's policies.[6]

The Defendants' redressability argument also relies on a second

---

[4] Doc. 43 at 7.

[5] Court's Order at Doc. 36, page 7, citing *Gallagher v. City of Clayton*, 699 F.3d 1013, 1016 (8th Cir. 2012)

[6] Doc. 33 at ¶¶ 33, 34, and 38.

incorrect premise:

> The Social Sections do not remove material from the library… all library patrons can access the Social Section.[7]

That characterization of the Seconded Amended Complaint leaves out an important detail. The complaint states:

> Each branch has moved all of the LGBTQ kids' books into a new section, so they have their own section. It is within the adult section…[8]

This Court previously rejected the Defendants' notion that moving children's books to the adult section could not be a First Amendment violation.

> The Court would emphasize, again, that the fact Plaintiffs still maintain some degree of access to the books in question does not mean Plaintiffs have suffered no injury for purposes of standing, or that no First Amendment violation has occurred.[9]

Because the Defendants' redressability arguments rely on incorrect factual premises, those arguments must fail.

### 2.2 The Defendants' Redressability Argument Ignores Binding Precedent

The Defendants rely on *Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) to

---

[7] Doc. 43 at 7.

[8] Doc. 41 at ¶ 22.

[9] Doc. 36 at 15 n.2.

argue that the relief the Plaintiffs seek cannot redress their injury, and therefore their complaint must be dismissed. Setting aside the fact that the relief sought would, in fact, redress the injury, Defendants' argument overlooks Eighth Circuit precedent:

> The sufficiency of a pleading is tested by [FRCP] 8(a)(2) statement of the claim for relief and the demand for judgment is not considered part of the claim for that purpose, as numerous cases have held. Thus, the selection of an improper remedy in the Rule 8(a)(3) demand for relief will not be fatal to a party's pleading if the statement of the claim indicates the pleader may be entitled to relief of some other type… a court may dismiss a complaint only if it is clear that *no* relief could be granted under *any* set of facts that could be proved consistent with the allegations.[10]

Thus, whatever concerns the Defendants may have with the Plaintiffs' request for relief must wait for later; the motion to dismiss or judgment on the pleadings stage is not the place to address them.

### 3. The Defendants' Argument § I.C, Library Director/Board

The Defendants' Brief states:

> Plaintiffs do not allege that the Library Board or the Library Director created the injury for which Plaintiffs complain of. Nor do Plaintiffs allege that the Library Board or Library Director enforce library policy. Instead, Plaintiffs allege that their

---

[10] *Dairy v. Becwood Tech. Group L.L.C.*, 635 F.3d 1106, 1108-09 (8th Cir. 2011) (emphasis in original).

> grievance rests solely with the Quorum Court and County Judge.[11]

This is demonstrably false.

The Second Amended Complaint states that the Library Director (*i.e.*, county librarian) "conduct[s] the library," and states (or at least can be inferred) that the Library Board administers the library.[12]

The Complaint alleges that "the Quorum Court [is] engaging in viewpoint discrimination by <u>requiring its library board and librarian</u> to label and sequester books based on their content."[13] The next paragraph in the Complaint quotes the then-Library Director at length, telling the Library Board how she is implementing the Quorum Court's unconstitutional policy.[14]

Paragraph 9 of the Complaint states, "Collectively, the Defendants will be referred to as Crawford County or the County." And the Complaint uses that collective term: discussing the "County's censorship,"[15] "the County punishing the already marginalized LGBTQ+ community,"[16] and "[the]

---

[11] Doc. 43 at 8 (citations to "Doc. 41" and "id." omitted)

[12] Doc. 41 at ¶¶ 7-8, 16.

[13] Doc. 41 at ¶ 21 (emphasis added).

[14] Doc. 41 at ¶ 22.

[15] Doc. 41 at ¶ 26, 27

[16] Doc. 41 at ¶ 27.

Defendants' actions have resulted in the library not being administered in accordance with the First Amendment."[17]

Thus, the Second Amended Complaint makes clear that all the Defendants have a part in the creation and maintenance of the unconstitutional LGBTQ segregation and stigmatization scheme.

### 4. The Defendants' Argument § II, Striking Parts of the Complaint

The Defendants' § II argument fails because under *Dairy v. Becwood Tech. Group L.L.C.*, 635 F.3d 1106 (8th Cir. 2011), the relief sought is not part of the claim, and this Court will craft the relief, if any, by "information gleaned from discovery" and presented in summary judgments motions or at trial. The paragraphs that the Plaintiffs added to the Second Amended Complaint provide important background and context for the injunctive relief they seek.

The Defendants final argument, as best as one can understand it, appears to be:

1. The Plaintiffs' request for relief is immaterial and must be stricken;

2. Industry standards can play no role in enforceable law;

3. The Plaintiffs seeking compliance with an industry standard is analogous the *Missouri v. Jenkins* situation in which a federal court essentially

---

[17] Doc. 41 at ¶ 28.

ran a school district;

4. Requiring the library system to follow industry standards would lead to "never-ending litigation";

5. That this Court must limit its relief to "just that—the First Amendment."

The Plaintiffs will address each of these argument in turn.

### 4.1 Arg. that portions immaterial, must be stricken

Striking pleadings is "an extreme measure... [motions to strike are] viewed with disfavor and are infrequently granted."[18]

In this case, the Court, in its order at Doc. 36, pages 14-15, observed that it needed additional information about the library's prior policy and more "narrowly tailored" relief. The Plaintiffs amended their complaint accordingly. They showed that the libraries' industry standard preserves both the First Amendment and flexibility. The Plaintiffs further bolstered their complaint by showing that Arkansas law recognizes the importance of the American Library Association by requiring regional and state librarians to have ALA accreditation.

In light of the Court's statements in Doc. 36, the additional information

---

[18] *Stanbury Law Firm, P.A. v. IRS*, 221 F.3d 1059, 1063 (8th Cir. 2000).

in the Second Amended Complaint "provides important context and information"[19] about the remedy the Plaintiffs seek.

### 4.2 The Defendants' argument that industry standards cannot be law

The Defendants claim that industry standards cannot be given the force of law. Industry standards, however, regularly have the force of law.

For example, in 10 CFR § 50.55a, "Codes and Standards," the Nuclear Regulatory Commission incorporates by reference more than 100 different industry standards. In 40 CFR § 98.84, "Monitoring and QA/QC requirements," the Environmental Protection Agency incorporates an industry standard by reference. In 46 CFR § 163.003-3, "ASTM standard," the Coast Guard incorporates by reference an industry standard. In 15 USC 2056(b), "Reliance of Commission upon voluntary standards," Congress's consumer safety law allows compliance to be demonstrated by following voluntary consumer safety standards.

There is no reason the industry standard set forth in the ALA Bill of Rights could not likewise be part of law, *i.e.*, an order from this Court. Indeed,

---

[19] *Id.*

Alabama regulations give the ALA's Library Bill of Rights the force of law.[20]

### 4.3 This case is not *Missouri v. Jenkins*

The Defendants rely on Justice Thomas's concurring opinion in *Missouri v. Jenkins*, 515 U.S. 70 (1995), for the proposition that this Court may not order a library system to follow industry standards. *Jenkins* is not remotely apposite. In *Jenkins*, the district court

> ordered quality education programs to address the "system wide reduction in student achievement" … After the State … had achieved a AAA rating, the District Court decided that even further measures were needed. … it ordered a massive magnet school and capital improvement plan … ordered salary assistance for teachers … ordered a round of salary increases for virtually all employees… formed a "desegregation monitoring committee" … it has made decisions concerning construction, facilities, staffing, and educational policy.[21]

The Plaintiffs have not sought, and do not seek, nearly that level of detailed judicial involvement in the operation of the Crawford County Library System.[22] Instead, they are requesting that the Defendants stop segregating

---

[20] Ala. Admin. Code r. 520-3-1-.01 - Collection Development Policies (incorporating Library Bill of Rights); cf. Alaska Administrative Code 17.235 ("The Standards for Libraries in Higher Education, 2011, of the Association of College and Research Libraries/American Library Association, is adopted by reference…")

[21] *Missouri v. Jenkins*, 515 U.S. 70, 135 (1995) (Thomas, J., concurring).

[22] Even if the relief the Plaintiffs seek does require this Court to order and enforce a remedy the Defendants would find administratively awkward, inconvenient, bizarre, or burdensome, awkwardness and inconvenience cannot be avoided when a court orders and enforces remedial measures to eliminate a public institution's unconstitutional practices. *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 28 (1971).

and stigmatizing viewpoints they do not like. The ALA standards, created in the late 1930s in response to "growing intolerance, suppression of free speech, and censorship affecting the rights of minorities and individuals,"[23] give a good template for how that injunctive relief could read.

### 4.5 The Defendants' argument for relief to be "just that—the First Amendment."

The Plaintiffs agree that their request for relief should protect First Amendment rights. But saying "just that" would be vague and ambiguous. Clearly, the Defendants need more detail than "just that—the First Amendment." Ordering persons to "follow the First Amendment" and nothing more would be completely ineffectual. What is meant to "follow the First Amendment" is an entire area of law unto itself, with its own law school classes, textbooks, promotional NGOs, and thousands of cases.

As discussed above, using libraries' industry standards will accomplish both adherence to the First Amendment while allowing flexibility.

\* \* \*

The County's motion for a judgment on the pleadings and to strike should be denied. In the alternative, the Plaintiffs ask for leave to amend their

---

[23] <https://www.ala.org/tools/first-library-bill-rights> (accessed Jan. 20, 2024); see also *Fayetteville Public Library, et. al. v. Crawford County, et al*, 5:23-CV-05086, Doc. 53 at 6-12 (W.D. Ark. 2023) (Brooks, J.).

complaint.[24] "The court should freely give leave when justice so requires."[25]

Respectfully submitted,

PLAINTIFFS REBECKA VIRDEN, et al.

| /s/ Terrence Cain | /s/ Brian Meadors |
|---|---|
| Terrence Cain, Ark. Bar # 99128<br>Attorney for Plaintiffs<br>208 Brown Street<br>Little Rock, AR 72205-5841<br>501-952-8421<br>terrencecain@windstream.net | Brian Meadors, Ark. Bar # 2001186<br>Attorney for Plaintiffs<br>1930 W. Oak Shadows Cir<br>Memphis, TN 38119<br>980-867-1371<br>brianmeadors@gmail.com |

---

[24] If Plaintiffs were to amend their complaint, they would add: (1) Ms. Virden's sworn statements in Doc. 16-1; (2) Prof. Joudrey's Expert Report, which discusses how acceptable library practices follow the ALA Bill of Rights and Cataloguing Code Ethics. Prof. Joudrey's Report also discusses how the ALA Bill of Rights gives libraries the freedom of action that the Court, in Doc. 36, pp. 14-15, did not want to curtail; and (3) that the ALA Bill of Rights was, prior to this book segregation and stigmatization brouhaha, was both followed and part of the Crawford County Library System's Policy Manual.

[25] Fed. R. Civ. P. 15(a)(2). Rule 15(a)(2) reflects a policy of resolving cases on the merits, rather than on technical pleading requirements, and that policy should be applied with "extreme liberality." *C.F, ex rel. Farnan v. Capistrano Unified Sch. Dist.*, 654 F.3d 975, 985 (9th Cir. 2011) (quoting *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (quoting *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001))).