United States District Court
Western District of Arkansas
Fort Smith Division

**Rebecka Virden, et al.**                                                                                          **Plaintiffs**

v.                                   **Case No. 2:23-cv-02071-PKH**

**Crawford County, Arkansas, et al.**                                                                    **Defendants**

**Brief in Support of the Plaintiffs' Motion for Summary Judgment**

1. **Facts**

The facts of this case are laid out in detail in the Plaintiffs' Statement of Material Facts, thus, they will not retread that ground here, instead, they will proceed directly to their legal arguments. (Pls.' Statement of Material Facts, ¶¶ 1-32).

2. **The Summary Judgment Standard**

Summary judgment is appropriate when, viewing the record in the light most favorable to the nonmoving party, there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. *Wells Fargo Home Mortg., Inc. v. Lindquist*, 592 F.3d 838, 842 (8th Cir. 2010) (quoting *Henning v. Mainstreet Bank*, 538 F.3d 975, 978 (8th Cir. 2008)). In ruling on a motion for summary judgment, courts are required to draw all reasonable inferences in favor of the non-moving party, and they are prohibited from weighing the evidence or making credibility determinations. *Bell v. Kansas City Police Dep't*, 635 F.3d 346, 347 (8th Cir. 2011) (citing *Nyari v. Napolitano*, 562 F.3d 916, 922 (8th Cir. 2009)). The evidence and inferences drawn from that evidence must be viewed in the light most

favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To satisfy this burden, the movant must either submit evidentiary documents that negate the existence of some material element of the non-moving party's claims or defenses or, if the issue is one for which the non-moving party bears the burden of proof at trial, point out that the evidentiary record contains insufficient proof concerning an essential element of the moving party's claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

The non-moving party must present affirmative evidence in order to defeat a properly supported motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). The non-moving party may not rest upon the allegations or denials of its pleadings, but its response, by affidavits or otherwise, must set forth specific facts showing that there is a genuine issue for trial; if it does not so respond, summary judgment, if appropriate, shall be entered against it. Fed. R. Civ. P. 56(e)(3).

The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. *Anderson*, 477 U.S. at 247-248. The dispute about a material fact is genuine if the evidence is such that a

2

reasonable jury could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 247-248.

**3. The First Amendment includes a right to receive information, which includes a right to access materials in a public library.**

The First Amendment to the Constitution of the United States prohibits state actors from trammeling the exercise of free speech, and this prohibition is binding on the States and their subdivisions through the Due Process Clause of the Fourteenth Amendment. *Gitlow v. New York*, 268 U.S. 652, 666 (1925). Included in the right to freedom of speech is the right to "receive information." *Little v. Llano Cnty.*, No. 1:22-CV-424-RP, 2023 WL 2731089, at *7 n.4 (W.D. Tex. Mar. 30, 2023); *Sund v. City of Wichita Falls*, 121 F. Supp. 2d 530, 547 (N.D. Tex. 2000) (citing *Reno v. Am. Civil Liberties Union*, 521 U.S. 844, 874-880 (1997); *Bd. of Educ., Island Trees Union Free Sch. Dis. No. 26 v. Pico*, 457 U.S. 853, 867-868 (1982) (plurality opinion); *Tinker v. Des Moines Indep. Cmty. Sch. Dis.*, 393 U.S. 503, 511 (1969); *Campbell v. St. Tammany Sch. Bd.*, 64 F.3d 184, 190 (5th Cir. 1995)).[1]

---

[1] Many courts have held that there is a "First Amendment liberty interest" in accessing public library materials. *Neinast v. Bd. of Trs. of Columbus Metro. Libr.*, 346 F.3d 585, 592 (6th Cir. 2003); *Dolan v. Tavares*, No. 1:10-cv-10249-NMG, 2011 WL 10676937, at *13 (D. Mass. May 16, 2011); *Hunt v. Hillsborough Cnty.*, No. 8:07-cv-01168-JSM-TBM, 2008 WL 4371343, at *3 (M.D. Fla. Sept. 22, 2008); *Doyle v. Clark Cnty. Pub. Libr.*, No. 3:07-cv-00003-TMR-MRM, 2007 WL 2407051, at *5 (S.D. Ohio Aug. 20, 2007); *Miller v. Nw. Region Libr. Bd.*, 348 F. Supp. 2d 563, 570 (M.D.N.C. 2004); *Armstrong v. Dist. Of Columbia Pub. Libr.*, 154 F. Supp. 2d 67, 82 (D.D.C. 2001).

The right to receive information is "vigorously enforced" when it comes to public libraries, which are "the quintessential locus of the receipt of information." *Sund v. City of Wichita Falls*, 121 F. Supp. 2d 530, 547 (N.D. Tex. 2000) (quoting *Kreimer v. Bureau of Police for Town of Morristown*, 958 F.2d 1242, 1255 (3d Cir. 1995); citing *Bd. of Educ., Island Trees Union Free Sch. Dis. No. 26 v. Pico*, 457 U.S. 853, 868 (1982) (plurality opinion); *Minarcini v. Strongsville City Sch. Dist.*, 541 F.2d 577, 582 (6th Cir. 1976)). Public libraries have broad discretion when it comes to deciding what materials to include in their collections, however, that discretion is not absolute, and it applies only to the selection of materials. *Little v. Llano Cnty.*, No. 1:22-CV-424-RP, 2023 WL 2731089, at *7 (W.D. Tex. Mar. 30, 2023) (citing *U.S. v. Am. Libr. Ass'n*, 539 U.S. 194, 205 (2003) (plurality opinion)).

The First Amendment right to receive information prohibits public libraries from removing books from their shelves simply because they disapprove of the ideas contained in those books. *Little v. Llano Cnty.*, No. 1:22-CV-424-RP, 2023 WL 2731089, at *7 (W.D. Tex. Mar. 30, 2023) (citing *Campbell v. St. Tammany Sch. Bd.*, 64 F.3d 184, 189 (5th Cir. 1995) (quoting *Bd. of Educ., Island Trees Union Free Sch. Dis. No. 26 v. Pico*, 457 U.S. 853, 872 (1982) (plurality opinion))). Likewise, a public library cannot limit access to its materials solely because of the content of those materials unless it can demonstrate that the limit is necessary to achieve a compelling government interest, and there are no less restrictive alternatives available to achieve that interest. *Sund v. City of Wichita Falls*, 121 F. Supp. 2d 530,

548 (N.D. Tex. 2000) (citing *Int'l Soc'y for Krishna Consciousness, Inc.*, 505 U.S. 672, 678 (1992)).

The key inquiry in a book removal case is whether the decision makers were substantially motivated to limit or deny access to certain materials because they disapprove of the content in those materials or the viewpoints expressed in those materials. *Little v. Llano Cnty.*, No. 1:22-CV-424-RP, 2023 WL 2731089, at *7 (W.D. Tex. Mar. 30, 2023) (citing *Campbell v. St. Tammany Sch. Bd.*, 64 F.3d 184, 190 (5th Cir. 1995)). Content based speech restrictions are presumptively unconstitutional and subject to strict scrutiny. *Little v. Llano Cnty.*, No. 1:22-CV-424-RP, 2023 WL 2731089, at *11 (W.D. Tex. Mar. 30, 2023) (citing *Reed v. Town of Gilbert*, 576 U.S. 155, 163-164 (2015); *U.S. v. Playboy Ent. Grp.*, 529 U.S. 803, 813 (2000)). A speech restriction is content based if it applies to particular speech because of the topic discussed or to the idea or the message it expresses. *Little v. Llano Cnty.*, No. 1:22-CV-424-RP, 2023 WL 2731089, at *11 (W.D. Tex. Mar. 30, 2023) (citing *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015)).

And if a speech restriction targets not only the content of material, but its viewpoint, judicial scrutiny is even more exacting. *Sund v. City of Wichita Falls*, 121 F. Supp. 2d 530, 548 (N.D. Tex. 2000) (citing *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995) ("viewpoint discrimination is an egregious form of content discrimination")). When a removal decision is substantially motivated by a desire to strict access to specific content or to particular viewpoints, the defendant bears the burden of proving that the restriction is necessary to serve a compelling

5

state interest, and that the restriction is narrowly tailored to serve that compelling state interest. *Little v. Llano Cnty.*, No. 1:22-CV-424-RP, 2023 WL 2731089, at *12 (W.D. Tex. Mar. 30, 2023) (citing *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015); *Turner Broad. Sys., Inc. v. Fed. Commc'n Comm'n*, 512 U.S. 622, 664-665 (1994)).

4. **The Crawford County Quorum Court's decision to create a "Social Section" was substantially, if not exclusively, motivated by a desire to restrict access to materials that contain content about sexual minorities or that express viewpoints approving of same sex relationships.**

At the December 2022 meeting of the Crawford County Quorum Court ("QC"), Dr. Jeffrey Hamby ("Dr. Hamby"), his wife, Tammi Hamby ("Mrs. Hamby"), and the River Valley City Elders implored the QC to *remove* "…[lesbian, gay, bisexual, transgender, and queer] books" from the Crawford County Library System. (Pls.' Statement of Material Facts, ¶¶ 1-4). The basis of their request was that the books offended their sectarian religious beliefs, their religious liberties, and their personal moral preferences. (Pls.' Statement of Material Facts, ¶¶ 1-4). Put another way, they targeted certain books because of the books' content and the books' viewpoints.

In that same meeting, the then Crawford County Judge and several members of the QC threatened to eliminate the library system's funding unless it acceded to the demands of Dr. Hamby, Mrs. Hamby, and their like-minded allies. (Pls.' Statement of Material Facts, ¶¶ 6-7). Although the censors did not succeed in purging the books from the library system collection, they got close; the books were segregated and marked with a metaphorical scarlet letter to signal to the world that the content of the books and the viewpoints expressed in them are unacceptable to

a certain cohort in the Crawford County community. (Pls.' Statement of Material Facts, ¶¶ 8-11). This gambit led to the creation of the Social Section, which consists primarily of the materials the Defendants in this case deem objectionable because of the content in the materials and the viewpoint expressed in them. (Pls.' Statement of Material Facts, ¶¶ 14-27). In addition to creating the Social Section, the Defendants physically placed the materials on high shelves so children would have difficulty finding and accessing them. (Pls.' Statement of Material Facts, ¶¶ 16-18).

Tactics like those employed by the Defendants in this case are, regrettably, not new. In *Sund v. City of Wichita Falls*, patrons of a public library in Wichita Falls, Texas obtained an injunction to prohibit enforcement of an ordinance that gave library card holders the right to censor certain children's books by having those books moved from the children's area of the library to an adult section. 121 F. Supp. 2d 530, 531-535, 547-554 (N.D. Tex. 2000).

The defendants in *Sund*, like the Defendants in this case, first demanded the purging of the books from the library system collection, but when that strategy failed, the library system segregated the books by moving them to the adult section. 121 F. Supp. 2d at 547-554. And like the Defendants in this case, the *Sund* defendants put the allegedly offending books on high shelves in the adult section so children would have difficulty accessing them. 121 F. Supp. 2d at 543 n.15. *Sund* found that moving the books from the children's section to the adult section

7

"…attache[d] an unconstitutional stigma to [the materials and those who want to view them.]" 121 F. Supp. 2d at 551 n.23.

*Sund* also found that the defendants targeted the books because they objected to the content of the books and the viewpoints expressed in the books. 121 F. Supp. 2d at 548-549. Not only did the defendants' targeting violate the patrons' First Amendment right to receive information, it also gave the defendants a "heckler's veto" over lawful, constitutionally protected expression. *Sund v. City of Wichita Falls*, 121 F. Supp. 2d 530, 549 n.21 (N.D. Tex. 2000). The defendants in *Sund* argued that moving the books from the children's section to the adult section did not violate the First Amendment because they did not ban the books entirely. 121 F. Supp. 2d at 549-550. *Sund* rejected this argument, finding that an outright ban is not the only way to violate the First Amendment; disadvantaging access, or imposing disparate burdens on accessing public library materials violates the First Amendment when a substantial reason for doing so is an objection to the content contained in the materials or the viewpoints express in them. 121 F. Supp. 2d at 549-551.

At bottom, *Sund* invalidated the ordinance and enjoined its enforcement because the defendants engaged on content discrimination and viewpoint discrimination that violated the patrons' First Amendment right to receive information. 121 F. Supp. 2d at 553-554. Unfortunately, *Sund* did not put an end to public library censors' indefatigable efforts to use the police power of the state to

8

enforce their orthodoxy on those who dare to live their lives and to see the world differently than they do.

In *Little v. Llano County*, the library system in Llano County, Texas removed some books and restricted access to others based on their content and viewpoint, specifically books about sexual minorities. No. 1:22-CV-424-RP, 2023 WL 2731089, at *1-3 (W.D. Tex. Mar. 30, 2023). *Little* found that the defendants targeted the books because they objected to their depiction of sexual minorities. 2023 WL 2731089, at *11-13. Ultimately, *Little* ordered the defendants to return books they removed from the library collection because of their content or viewpoint and enjoined them from removing any other books during the pendency of the litigation. 2023 WL 2731089, at *9-14.

The Defendants in this case, like the defendants in *Sund* and in *Little* targeted books that feature sexual minorities, depict sexual minorities in a positive, light, or both. (Pls.' Statement of Material Facts, ¶¶ 1-4); 121 F. Supp. 2d 530, 531, 548-549 (N.D. Tex. 2000); No. 1:22-CV-424-RP, 2023 WL 2731089, at *1-3 (W.D. Tex. Mar. 30, 2023). The Defendants in this case, like the defendants in *Sund* and in *Little* segregated the books they found objectionable, and they did so substantially because of the content of those books and the viewpoints expressed in them. (Pls.' Statement of Material Facts, ¶¶ 14-27); 121 F. Supp. 2d at 543 n.15, 547-554; 2023 WL 2731089, at *9-13.

The defendants in *Sund* and in *Little* failed to demonstrate that their censorship actions were necessary to serve a compelling state interest or that the

9

means they chose were narrowly tailored to serve that interest. 121 F. Supp. 2d at 547-554; 2023 WL 2731089, at *9-14. The Defendants in this case cannot either, consequently, this Court should follow the lead of *Sund* and *Little* and find that the Defendants in this case engaged in content discrimination and viewpoint discrimination that violated the Plaintiffs' First Amendment right to receive information. 121 F. Supp. 2d 530, 548-554 (N.D. Tex. 2000); No. 1:22-CV-424-RP, 2023 WL 2731089, at *9-14 (W.D. Tex. Mar. 30, 2023). Additionally, this Court should enjoin the Defendants in this case from segregating any more books based on their content, viewpoint, or both, and it should order the Defendants to return those books they moved from the children's section to the Social Section back to the children's section.

Respectfully submitted,

Terrence Cain
Bar Number 99128
Attorney for the Plaintiffs
Attorney at Law
208 Brown Street
Little Rock, Arkansas 72205-5841
Telephone: (501) 664-7512
E-mail: terrencecain@windstream.net

Brian Meadors
Bar Number 2001186
Attorney for the Plaintiffs
1930 West Oak Shadows Circle
Memphis, Tennessee 38119-5407
Telephone: (980) 867-1371
E-mail: brianmeadors@gmail.com