UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

REBECKA VIRDEN; SAMANTHA ROWLETT;
and NINA PRATER, on their own behalf and on
behalf of their minor children                                                                PLAINTIFFS

v.                                              No. 2:23-cv-2071

CRAWFORD COUNTY, ARKANSAS;
COUNTY JUDGE CHRIS KEITH in his official
capacity only; QUORUM COURT MEMBERS
ROBERT KEVIN ARNOLD, LONNIE MYERS,
MORGAN R. MORGAN, BRAD MARTIN,
MARK SHAFFER, LONNIE JENNINGS, TIA
WOODRUFF, JASON COX, CRAIG
WAHLMEIER, MITCH CAROLAN, ROGER
ATWELL, JAYSON PEPPAS, and JEFF
BEAUCHAMP in their official capacities only;
LIBRARY BOARD MEMBERS KEITH PIGG,
TAMMARA HAMBY, KALEIN SCHAPER,
KAYLA RICH, and ROBBY DYER in their
official capacities only; and LIBRARY
DIRECTOR CHARLENE McDONNOUGH in
her official capacity only                                                                     DEFENDANTS

**OPINION AND ORDER**

Before the Court are Defendants' motion to dismiss (Doc. 42) and brief in support (Doc. 43), and Plaintiffs' response in opposition (Doc. 51). Also before the Court are Defendants' motion to exclude Plaintiffs' proposed expert (Doc. 60) and brief in support (Doc. 61), Plaintiffs' response in opposition (Doc. 71), and Defendants' reply in support (Doc. 78). Also before the Court are Plaintiffs' motion to supplement their statement of facts (Doc. 96) and brief in support (Doc. 97), Defendants' response in opposition (Doc. 98), and Plaintiffs' reply in support (Doc. 101). For the reasons given below, both of Defendants' motions will be DENIED, and Plaintiffs' motion will be GRANTED.

1

I.  **Defendants' Motion to Dismiss (Doc. 42).**

As explained in a previous opinion and order,

> According to Plaintiffs' amended complaint, in late 2022 or early 2023 the Crawford County Library System implemented a policy under which its library branches must remove from their children's sections all books containing LGBTQ themes, affix a prominent color label to those books, and place them in a newly-created section called the "social section."  Plaintiffs allege this policy was imposed on the Library System by the Crawford County Quorum Court in response to political pressure from constituents who objected, at least partly on religious grounds, to the presence of these books in the children's section.  Plaintiffs and their minor children are residents of Crawford County and users of its Library System.  On May 26, 2023, Plaintiffs filed this lawsuit against Crawford County, claiming that the aforementioned policy violates the First Amendment to the United States Constitution.

(Doc. 36, p. 2).

Motion practice quickly followed, with Defendants filing a motion to dismiss and Plaintiffs filing a motion for a temporary restraining order and preliminary injunction, among other things. The Court eventually entered an order denying all those motions.  Of particular relevance here, Plaintiffs had asked the Court to enter an order requiring the Defendants to return to book-processing policy that it was using in June 2022.  The Court denied this request, mainly because it was concerned granting this relief would needlessly curtail the library's discretion in processing books on topics which had no relevance to this litigation, and because no information had been provided as to what the library's June 2022 policy was. *See id.* at 14–15.

A few months later, Plaintiffs filed a second amended complaint (Doc. 41).  This pleading refined their request for injunctive relief, asking the Court to "order the Crawford County Library System to operate in a manner consistent with the Cataloging Code of Ethics and the American Library Association's Bill of Rights."  *See* Doc. 41, p. 12.  However, it was not accompanied by any renewed motion for a preliminary injunction—a forbearance which was consistent with this Court's observation in its prior order that "[c]rafting appropriately tailored relief will require

careful consideration that is informed by facts gleaned through discovery." *See* Doc. 36, pp. 15–16.

Defendants have filed a new motion to dismiss, which mostly targets the request for injunctive relief in Plaintiffs' second amended complaint.[1] They argue that Plaintiffs lack standing to seek this relief, for two independent reasons: (1) Plaintiffs have not suffered any legally cognizable injury, as there is no law requiring libraries to follow American Library Association ("ALA") policies; and (2) requiring Defendants to follow ALA policies would not redress any alleged violation of Plaintiffs' constitutional rights, as Defendants are already adhering to ALA policies and, regardless, following ALA policies would not guarantee compliance with the First Amendment. On this basis, Defendants seek dismissal of Plaintiffs' second amended complaint. Alternatively, Defendants ask that all allegations regarding ALA policies and Plaintiffs' request for injunctive relief be stricken from their second amended complaint.

The Court does not understand Plaintiffs' claims to be premised on the notion that Defendants have any general legal duty to comply with ALA policies. Rather, Plaintiffs' claims are based on an alleged violation of the First Amendment. Doubtless there are many different ways a library could organize its collection without running afoul of First Amendment strictures on content-based discrimination or viewpoint discrimination. Plaintiffs allege that compliance with certain ALA policies is one such way. Whether they are correct about that, and whether Defendants are already complying with these ALA policies (or, for that matter, with the First Amendment itself), are factual inquiries that are not appropriately resolved from the face of the pleadings. As already discussed in this Court's prior order, *see* Doc. 36, Plaintiffs have alleged

---

[1] To whatever extent Defendants' motion to dismiss also reasserts arguments raised in their prior motion to dismiss, those arguments are rejected for the same reasons as before. *See generally* Doc. 36.

sufficient facts to establish their standing to bring this lawsuit alleging First Amendment violations. If Plaintiffs manage to prove their rights are indeed being violated, then this Court has power to fashion an appropriate equitable remedy which may or may not be the one they have requested in their second amended complaint. *See* Fed. R. Civ. P. 54(c) ("Every . . . final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings."). The Court will not prejudge that issue by striking Plaintiffs' requested remedy from their pleadings before the factual inquiry necessary to judge its propriety has even been conducted.

Finally, Defendants argue that the pleadings allege insufficient facts to show that the library board and library director in particular have caused any injury to Plaintiffs. This is incorrect. The second amended complaint alleges that the library board and director are responsible for implementing the policy at issue in this lawsuit, *see* Doc. 41, ¶ 21, and that the director negotiated the details of this policy with the quorum court, *see id.* at ¶ 22. Accepting those allegations as true, these Defendants are obviously part of the causal chain for Plaintiffs' alleged injuries and are thus proper targets for injunctive relief. Defendants' motion to dismiss will therefore be denied.

**II.     Defendants' Motion to Exclude (Doc. 60).**

Plaintiffs have retained an expert witness named Dr. Daniel Joudrey, who is a professor of information organization and cataloging at the Simmons University School of Library and Information Science. *See* Doc. 60-1, pp. 1–2. Dr. Joudrey submitted an expert report that discusses the Cataloging Code of Ethics and the ALA's Bill of Rights, and opines that Defendants' actions are inconsistent with those standards as well as with the historical practices and understandings of libraries. *See id.* at 3. His report also opines that a library "wanting to operate consistently with First Amendment principles and allow its patrons to receive information without unnecessary

impediment should follow the Cataloging Code of Ethics and American Library Association's Bill of Rights." *Id.*

Defendants filed a motion to exclude Dr. Joudrey's opinions under *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) and Federal Rule of Evidence 702. That rule allows a witness "who is qualified as an expert by knowledge, skill, experience, training, or education" to provide opinion testimony if the party offering his testimony demonstrates to the court that it is more likely than not that:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

*See* Fed. R. Evid. 702. This rule is "one of admissibility rather than exclusion," *Shuck v. CNH Am., LLC*, 498 F.3d 868, 874 (8th Cir. 2007), and "doubts regarding whether an expert's testimony will be useful should generally be resolved in favor of admissibility," *Sphere Drake Ins. PLC v. Trisko*, 226 F.3d 951, 954 (8th Cir. 2000) (alteration omitted). Under *Daubert* and its progeny, the district court performs a gatekeeping function meant to "protect *juries* from being swayed by dubious scientific testimony." *See David E. Watson, P.C. v. United States*, 668 F.3d 1008, 1015 (8th Cir. 2012) (emphasis in original). However, the present case is set for a bench trial rather than a jury trial since Plaintiffs are seeking only equitable relief. *See* Doc. 68. In bench trials, *Daubert*'s application is relaxed because "there is less need for the gatekeeper to keep the gate when the gatekeeper is keeping the gate only for himself." *Watson*, 668 F.3d at 1015 (alterations omitted).

Defendants contend that Dr. Joudrey's testimony does not satisfy any of the four Rule 702 requirements. First, Defendants argue that Dr. Joudrey's specialized knowledge will not help the Court to understand the evidence or to determine a fact in issue. The Court disagrees, and believes

5

that expert testimony about library cataloging industry standards is more likely than not to help it understand the evidence in this case. After all, the central issues and disputes in this case concern Defendants' library cataloging practices, whether or to what extent those practices interfere with Plaintiffs' First Amendment right to access information, and how (if at all) the Court should order Defendants to modify those library cataloging practices.

Second, Defendants argue that Dr. Joudrey's opinions are not based on sufficient facts, because he simply assumed the truth of facts given to him by Plaintiffs' counsel instead of independently investigating the facts on his own. Setting aside the (disputed) question of whether Dr. Joudrey performed any independent factual investigation, this argument ignores the United States Supreme Court's observation that "more than 200 years" of "settled evidence law" allows an expert to "express an opinion that is based on facts that the expert assumes, but does not know, to be true." *See Williams v. Illinois*, 567 U.S. 50, 57 (2012). When an expert bases his opinion on assumed facts, then "[i]t is . . . up to the party who calls the expert to introduce other evidence establishing the facts assumed by the expert." Indeed, the Federal Rules of Evidence expressly permit this practice, authorizing an expert to "base an opinion on facts or data in the case that" he has either "personally observed" or "*been made aware of*." Fed. R. Evid. 703 (emphasis added). So the Court disagrees with Defendants on this point as well.

Third, Defendants argue that Dr. Joudrey's opinions are not the product of reliable principles and methods. To some extent, Defendants rehash their argument about insufficient factual investigation to support this point as well; to that same extent, the Court disagrees as already stated above. Additionally, Defendants characterize Dr. Joudrey's opinion as being that "the *only* way to 'operate consistently with First Amendment principles and allow its patrons to receive information' is to follow the ALA's policies," and they criticize him for failing to "explain

6

why the ALA policies are the only way to comply with the First Amendment." *See* Doc. 61, p. 11 (emphasis added).  The Court does not believe this is an accurate characterization of Dr. Joudrey's opinions.  The Court has reviewed Dr. Joudrey's expert report and his deposition testimony, and has not found any place where he opined that compliance with ALA policies is the "only" way to comply with the First Amendment.  Rather, he opines that if a library wants to operate consistently with First Amendment principles, then it "should" adhere to ALA cataloging policies.  *See* Doc. 60-1, p. 3.  When elaborating on this opinion in his deposition, Dr. Joudrey explained: "I thought that if they were operating consistently within these documents . . . that it would result in libraries still having the latitude to organize their materials by creating special displays" and "would result in, you know, following general principles of the profession which align with First Amendment principles, . . . and it would align with how a trained librarian would understand the field." *See* Doc. 60-2, p. 41 (internally numbered 161:1–161:12).  In other words, Dr. Joudrey's opinion is not that following ALA policies is the only way of complying with the First Amendment; rather, it is that following ALA policies serves a variety of salutary goals, including "align[ing] with First Amendment principles."

To be clear, and as Dr. Joudrey repeatedly acknowledged in his deposition, he is not a lawyer and is not qualified to opine on what the law is nor on whether Defendants have complied with the law in this case.  Such determinations are ultimately the prerogative of this Court.  But the Court sees nothing improper about permitting expert opinion testimony regarding how ALA cataloging policies attempt to accommodate a variety of concerns and interests which bear upon a librarian's profession, which include but are not limited to First Amendment principles.  As Defendants concede, Dr. Joudrey is "equipped to opine on the 'best practices' touted by the ALA."

7

*See* Doc. 61, p. 11. Accordingly, the Court finds it more likely than not that his testimony is the product of reliable principles and methods.

Finally, Defendants argue that Dr. Joudrey's opinions do not reflect a reliable application of his principles and methods to the facts of the case. This particular argument rests on two premises. One is that Dr. Joudrey walked back a couple of his opinions when pressed on them during his deposition. The other is that Dr. Joudrey improperly expresses a legal conclusion when he opines that libraries wishing to comply with the First Amendment should follow ALA policies. As for the first premise, the Court does not see this as undermining Dr. Joudrey's reliability. To the contrary, it shows a willingness to acknowledge when one misspeaks and to adjust one's opinions to account for new information. As for the latter premise, the Court has already rejected it in the preceding two paragraphs.

Ultimately, if this case proceeds to a bench trial then it will be this Court's duty to consider all the evidence, including Dr. Joudrey's testimony, and assign it the weight the Court believes it deserves. The Court sees no need to exercise its discretion now in a manner that would preemptively tie its own hands later. As already noted above, "there is less need for the gatekeeper to keep the gate when the gatekeeper is keeping the gate only for himself." *Watson*, 668 F.3d at 1015 (alterations omitted). For all the foregoing reasons, Defendants' motion to exclude Dr. Joudrey's testimony will be denied.

### III.   Plaintiffs' Motion to Supplement (Doc. 96).

At some point in 2023, Plaintiffs propounded on Defendants the following request for production: "Provide all library policies regarding library material selection in effect from 2020 to the present." *See* Doc. 96-1, p. 1. In response, on November 8, 2023, Defendants provided an undated policy entitled "Materials Selection" which stated, among other things, that "[t]he library

8

subscribes to the Library Bill of Rights of the American Library Association," and that "[t]he library also subscribes to the Freedom to Read Statement prepared by the American Library Association and the American Publishers' Council." *See id.* at 4. The ALA's Bill of Rights and Freedom to Read Statement were attached as appendices to that Materials Selection policy. *See id.* at 5–9.

On February 18, 2024, Plaintiffs moved for summary judgment. *See* Doc. 57. In support of that motion, Plaintiffs filed a statement of undisputed material facts which included the following assertion:

> [T]he Social Section violates the Library's existing, written . . . Materials Se[le]ction Policy, which "applies to the materials owned by" the Library, [and] "subscribes to the Library Bill of Rights of the American Library Association . . . [and] the Freedom to Read Statement prepared by the American Library Association and the American Publishers' Council." These policies prohibit, among other things: restraint in obtaining reading material; allowing groups to impose their tastes on the community at large; and labeling that characterizes material as subversive or dangerous.

(Doc. 58, ¶ 27.2). In support of this assertion, Plaintiffs attached as an exhibit the same materials the Defendants had produced in response to Plaintiffs' first request for production described above, bearing the same Bates stamp numbers that Defendants had placed on them before producing them to Plaintiffs. *See* Doc 58-24, pp. 2–7; *compare id. with* Doc. 96-1, pp. 1, 4–9.

On March 11, 2024, Defendants filed a response in opposition to Plaintiffs' motion for summary judgment. *See* Doc. 80. Accompanying that response, Defendants filed a response to Plaintiffs' statement of material facts which included the following response to Plaintiffs' material fact number 27.2:

> Denied.
>
> The Crawford County Library System's Material Selection policy provided by Plaintiffs is not dated and the American Library Association's Library Bill of Rights and Freedom to Read Statements are from 2023 when Defendants' counsel

9

> provided them to Dr. Joudrey during his deposition because he failed to include them in his report. *Doc 61*; *Doc. 60-1*; *Doc. 60-2* at 5 (Defendants [sic] counsel explaining that he compiled the listed documents and provided them to Dr. Joudrey for his deposition after Dr. Joudrey failed to do so). That is why the Bates stamp appearing on Plaintiffs' proposed exhibit was stamped by Defendants and is Defendants' Bates stamp.
>
> Defendants deny that the Material Selection policy provided by Plaintiffs was written and adopted when the current 2023 versions of the Library Bill of Rights and Freedom to Read Statements were published. *Doc. 58-24* at 2. Defendants deny that Plaintiffs have any standing to assert claims of policy violations. *Docs. 42 & 43*. Defendants deny that these policies apply to them. *Id.*

(Doc. 81, ¶ 27.2).

Several of the assertions in Defendants' response are obviously false. For one thing, as already noted, Defendants Bates stamped and provided these materials to Plaintiffs on November 8, 2023 in response to a discovery request from Plaintiffs. Dr. Joudrey's deposition was not taken until nearly two months later, on January 2, 2024. *See* Doc. 60-2, p. 1. For another, the documents produced by Defendants and cited by Plaintiffs in support of their summary judgment motion clearly state that they were last amended on January 29, 2019, and June 30, 2004, respectively. *See* Doc. 58-24, pp. 3, 6; Doc. 96-1, pp. 5, 8. So it is misleading at best to assert that those documents "are from 2023" and that the Material Selection policy was not "written and adopted when the current 2023 versions" of those documents were published.

On April 1, 2024, Plaintiffs filed the instant motion to supplement their fact number 27.2, seeking leave to provide the Court with the original request for production and response thereto discussed above, to refute Defendants' assertions about these documents. Defendants responded in opposition, arguing that this motion is procedurally improper under Fed. R. Civ. P. 56(e), claiming that Plaintiffs misconstrued Defendants' response to their statement of facts, and requesting that they be awarded the attorney fees they incurred in relation to this motion practice. *See generally* Doc. 98.

The Court disagrees with Defendants on all these points, and will grant Plaintiffs' motion. First, regardless of whether Rule 56(e) authorizes the type of supplementation that Plaintiffs are requesting here, district courts enjoy broad case-management discretion to authorize the filing of supplemental materials as they deem appropriate. *Cf. Postawko v. Mo. Dept. of Corrs.*, 910 F.3d 1030, 1037 n.3 (8th Cir. 2018) (observing that admission of evidence introduced in a reply and authorizing the filing of a sur-reply is "an appropriate exercise of discretion in a matter of case management left to the district court"). Second, the Court believes the dates, Bates stamps, and language in these materials all speak for themselves, and does not believe the Plaintiffs have misconstrued them. Finally, in light of this ruling, the Court obviously will not award Defendants any attorney fees relating to this motion. Plaintiffs need not make any additional filings pursuant to this ruling; the Court will simply include Doc. 96-1 in the materials it considers when ruling on the parties' cross-motions for summary judgment.

### IV.    Conclusion.

IT IS THEREFORE ORDERED that Defendants' motion to dismiss Plaintiffs' second amended complaint (Doc. 42) is DENIED, Defendants' motion to exclude Plaintiffs' proposed expert (Doc. 60) is DENIED, and Plaintiffs' motion to supplement their statement of facts (Doc. 96) is GRANTED.

IT IS SO ORDERED this 16th day of May, 2024.

/s/ P. K. Holmes, III
P.K. HOLMES, III
U.S. DISTRICT JUDGE