IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

REBECKA VIRDEN; SAMANTHA ROWLETT;
and NINA PRATER, on their own behalf and
on behalf of their minor children                                          PLAINTIFFS

V.                           CASE NO. 2:23-CV-2071

CRAWFORD COUNTY, ARKANSAS; COUNTY
JUDGE CHRIS KEITH in his official capacity
only; QUORUM COURT MEMBERS ROBERT
KEVIN ARNOLD, LONNIE MYERS, MORGAN R.
MORGAN, BRAD MARTIN, MARK SHAFFER,
LONNIE JENNINGS, TIA WOODRUFF, JASON
COX, CRAIG WAHLMEIER, MITCH CAROLAN,
ROGER ATWELL, JAYSON PEPPAS, and JEFF
BEAUCHAMP in their official capacities only;
LIBRARY BOARD MEMBERS KEITH PIGG,
TAMMARA HAMBY, KALEIN SCHAPER, KAYLA
RICH, and ROBBY DYER in their official capacities
only; and LIBRARY DIRECTOR CHARLENE
McDONNOUGH in her official capacity only                                   DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Before the Court are:

- Plaintiffs' Motion to Amend the Judgment (Doc. 114) and Brief (Doc. 115) in support, Defendants' Response (Doc. 118) in opposition, Plaintiffs' Reply (Doc. 121), and separate Defendant Charlene McDonnough's Response (Doc. 130) to Plaintiffs' Motion;

- Separate Defendant McDonnough's Motion to Strike Ms. McDonnough from Defendants' Response to Plaintiffs' Motion to Amend the Judgment (Doc. 128);

- Separate Defendant McDonnough's Motion to Disgorge PPGMR's Fees and for PPGMR to Indemnify the Crawford County Library System (Doc. 136) and Brief

1

- (Doc. 137) in support, PPGMR's Response (Doc. 141) in opposition, separate Defendant McDonnough's Reply (Doc. 145), and PPGMR's Surreply (Doc. 148);

- Plaintiffs' Motion for Costs & Attorney Fees (Doc. 107) and Brief (Doc. 108) in support, Defendants' Response (Doc. 127) in opposition, Separate Defendant McDonnough's Response (Doc. 129), and Plaintiffs' Reply (Doc. 138);

- Plaintiffs' Supplemental Motion for Attorney Fees (Doc. 116) and Brief (Doc. 117) in support;

- Plaintiffs' Second Supplemental Motion for Attorney Fees (Doc. 123) and Brief (Doc. 124) in support;

- Plaintiffs' Third Supplemental Motion for Attorney Fees (Doc. 139) and Brief (Doc. 140) in support, and Defendants' Response (Doc. 142) in opposition; and

- PPGMR Law, PLLC's ("PPGMR") Motion to Withdraw as Counsel of Record (Doc. 135).

For the reasons given below, Plaintiffs' Motion to Amend (Doc. 114) and Separate Defendant McDonnough's Motions to Strike (Doc. 128) and Disgorge (Doc. 136), are all **DENIED**; Plaintiffs' Motion for Costs & Attorney Fees (Doc. 107) is **GRANTED**; Plaintiffs' Supplemental (Doc. 116), Second Supplemental (Doc. 123), and Third Supplemental (Doc. 139) Motions for Attorney Fees are all **DENIED**; and PPGMR's Motion to Withdraw (Doc. 135) is **DENIED**.

## I.   BACKGROUND

In May 2023, Plaintiffs brought this lawsuit under 42 U.S.C. § 1983 against Crawford County, Arkansas and various official-capacity Defendants. They claimed that the Crawford County Library System, under pressure from various County officials, had

removed books containing LGBTQ themes from their original sections and had placed them in a new section called the "social section."  Plaintiffs argued that this policy violated the First Amendment to the United States Constitution, and they sought injunctive relief ordering the social section's dissolution.  On September 30, 2024, this Court entered Judgment in Plaintiffs' favor.  *See* Doc. 106.  In its accompanying Opinion and Order, the Court found on summary judgment that the social-section policy was a textbook example of viewpoint discrimination which violated the First Amendment.  *See* Doc. 105, pp. 5–10.

Following the entry of Judgment, Plaintiffs moved for an award of attorney fees and costs as the prevailing parties in this action.[1]  But instead of the relatively straightforward briefing which fee motions typically entail, this matter quickly spiraled out of control, spawning a bevy of related motions from Defendants and Plaintiffs, including motions between Defendants who were taking opposing, or at least inconsistent, positions.  The issue which has driven this unusually convoluted post-judgment motion practice is the question of whence the funds for payment of attorney fees will come.  Apparently the County is considering having the library system pay some portion of any attorney fee award entered in this case, which Plaintiffs find objectionable.  Therefore Plaintiffs have moved for an amendment to the judgment prohibiting Defendants from using library funds to pay any fee award.  Separate Defendant Library Director Charlene McDonnough also opposes the use of library funds for this purpose, and has made numerous filings reflecting that position.  Ms. McDonnough has also asked this Court to disgorge the fees of PPGMR, the law firm which represented Defendants throughout this

---

[1] Upon the filing of Plaintiffs' initial Motion for Attorney Fees, this matter was transferred to the undersigned, in light of the Honorable P.K. Holmes, III's retirement from the bench.

3

lawsuit. The conflict between Ms. McDonnough on the one hand and PPGMR and the other Defendants on the other hand eventually led PPGMR to move to withdraw as counsel for Defendants in this case. Meanwhile, Plaintiffs filed three supplemental motions for additional attorney fees incurred or arising from this post-judgment motion practice. All of these motions have now been fully briefed and are ripe for decision.

## II.  DISCUSSION

The Court will first take up Plaintiffs' Motion to Amend the Judgment (Doc. 114). Then the Court will address the two motions filed by separate Defendant McDonnough (Docs. 128, 136). Next the Court will decide all four fee motions filed by Plaintiffs (Docs. 107, 116, 123, 139). Finally, the Court will rule on PPGMR's Motion to Withdraw (Doc. 135).

### A.  Plaintiffs' Motion to Amend the Judgment (Doc. 114)

This Court's September 30, 2024 Judgment awarded Plaintiffs the following injunctive relief against Defendants:

> Defendants are . . . ORDERED to immediately dissolve the "social" or "social issues" sections in the Crawford County Library System and to move the materials contained therein to appropriate sections in general circulation without consideration of whether they approve or agree with the viewpoints expressed in such materials, and without consideration of whether the viewpoints expressed in such materials are unpopular or controversial. Defendants are further ORDERED to refrain from coercing Crawford County Library System staff into acting inconsistently with this injunction.

(Doc. 106, p. 1). This final sentence regarding coercion was necessary because the record on summary judgment contained "uncontroverted evidence that during a December 2022 Quorum Court meeting shortly before the creation of the social section, at least one member of the Quorum Court threatened to withhold appropriations from the Library," along with a Quorum Court member's deposition testimony that "he and

4

'probably all of' the Quorum Court's members wanted to defund the Library if its director did not find a way to satisfy constituents' concerns about books that were subsequently moved to the social section." *See* Doc. 105, p. 3. The Court explained in its Opinion and Order on summary judgment that this "would support injunctive relief against members of the Quorum Court prohibiting them from conditioning funding on the social section's creation or maintenance," because although "[l]egislative bodies have 'wide latitude to attach conditions to the receipt' of funding in order to further their policy objections, . . . they 'may not "induce" the recipient "to engage in activities that would themselves be unconstitutional."'" *See id.* at 4 (quoting *U.S. v. Am. Library Assoc., Inc.*, 539 U.S. 194, 203 (2003) (internally quoting *South Dakota v. Dole*, 483 U.S. 203, 206 (1987)).

Plaintiffs now argue that if the funds for attorney fees were paid from the Library system's coffers, then that would violate this Court's injunction as well as Arkansas statutory law regarding county library appropriations. *See* Doc. 115, ¶¶ 2, 5. Therefore, Plaintiffs ask that the Court add the following sentence to its award of injunctive relief: "Defendants are further ORDERED that none of the monies for the fees, expenses, or other costs of this lawsuit (or any subsequent proceedings) come, directly or indirectly, from Crawford County Library System funds or the System's anticipated, normal income." *See* Doc. 114, p. 4.

As for whether paying attorney fees from library funds would violate Arkansas law—that question is beyond the scope of this Court's authority to decide here. Plaintiffs' Motion was brought under Rule 59(e) of the Federal Rules of Civil Procedure, which permits motions to alter or amend a judgment to be filed within 28 days of its entry. "Rule 59(e) motions serve a limited function of correcting manifest errors of law or fact or to

5

present newly discovered evidence. Such motions cannot be used to introduce new evidence, tender new legal theories, or raise arguments which could have been offered or raised prior to entry of judgment." *Innovative Home Health Care, Inc. v. P.T.-O.T. Assocs. of the Black Hills*, 141 F.3d 1284, 1286 (8th Cir. 1998) (internal quotation marks and citations omitted). Rule 59(e) "was not intended to apply" to "issues wholly collateral to the judgment in the main cause of action." *Buchanan v. Stanships, Inc.*, 485 U.S. 265, 268–69 (1988). The question whether Arkansas law permits library funds to be used for payment of litigation expenses was irrelevant to the claims and injunctive relief in this case, which all arose from the First Amendment to the United States Constitution, not Arkansas statutory law.

As for whether using library funds to pay for litigation expenses would violate this Court's previous injunction—it would only violate the injunction if it were done, or threatened to be done, in order to "coerc[e] Crawford County Library System staff into acting inconsistently with" this Court's order to "dissolve the 'social' or 'social issues' sections in the Crawford County Library System and to move the materials contained therein to appropriate sections in general circulation" without consideration of whether the viewpoints expressed therein were agreeable or unpopular. *See* Doc. 160, p. 1. But Plaintiffs have not presented this Court with any evidence that the County's recent discussions around possibly paying litigation expenses from library funds have involved threats or coercion for library staff to recreate the social section or to adopt some similar policy.

It is unsurprising, then, that Plaintiffs are not asking for the injunction to be enforced on its own terms but rather for its language to be amended—and expanded. But this is

6

not proper under Rule 59(e), because the First Amendment implications for funding or defunding public libraries were already argued and addressed in this Court's September 30, 2024 Opinion and Order. The Plaintiffs presented evidence that the County had threatened to withhold funds from the library system, and this Court carefully analyzed judicial precedent establishing that while there is no First Amendment right to fund libraries in general or to provide "universal coverage" of all different viewpoints in libraries, public actors may not condition access to such funds on recipients' willingness to engage in viewpoint discrimination. *See* Doc. 105, pp. 3–4, 9. Thus the Court's Judgment went as far as it was permitted to go on this point, and no further. Plaintiffs may not use Rule 59(e) to tender new legal theories or to seek injunctive relief that they could have sought before judgment was entered. Therefore, Plaintiffs' Motion to Amend the Judgment (Doc. 114) will be DENIED.

> **B.     Separate Defendant Library Director Charlene McDonnough's Motions to Strike (Doc. 128) and to Disgorge (Doc. 136)**

The Motion to Amend the Judgment that was discussed in the preceding subsection was opposed by Defendants, who filed a Response in opposition at Doc. 118. Subsequently, separate Defendant McDonnough moved under Rule 12(f) of the Federal Rules of Civil Procedure for her name to be stricken from the names of the Defendants appearing in that oppositional Response. Ms. McDonnough then filed her own separate Response to Plaintiffs' Motion to Amend at Doc. 130, in which she argued that Plaintiffs' Motion should be granted.

The Court has noted Ms. McDonnough's withdrawal of support from the other Defendants' Response (Doc. 118), and included Ms. McDonnough's separately-filed Response (Doc. 130) in the materials it considered when ruling on Plaintiffs' Motion to

7

Amend. However, as a technical matter, Ms. McDonnough's Motion to Strike will be DENIED, because Rule 12(f) does not authorize the relief requested therein. Rule 12(f) only authorizes courts to strike material "from a pleading"; and "pleadings" are defined in Rule 7(a) as being expressly limited to complaints, answers to complaints, answers to counterclaims designated as counterclaims, answers to crossclaims, third-party complaints, answers to third-party complaints, and court-ordered replies to answers. Briefs filed in response to motions are not pleadings, as they do not appear in that list.

The Court turns now to Ms. McDonnough's Motion to Disgorge (Doc. 136). In this Motion, Ms. McDonnough argues that the disagreement between herself and the other Defendants as to whether library funds should be used to pay litigation expenses creates a conflict of interest for PPGMR (which had represented all Defendants in this matter up through Judgment). She further alleges that PPGMR "apparently knew that the County always reserved the right to take library money," and that accordingly this conflict of interest existed throughout the pendency of this matter. *See* Doc. 137, ¶ 4. She cites an Arkansas case for the proposition that:

> [A]n attorney must not represent opposed interests; and the usual consequence has been that he is debarred from receiving any fee from either, no matter how successful his labors. Nor will the court hear him urge, or let him prove, that in fact the conflict of his loyalties has had no influence upon his conduct; the prohibition is absolute and the consequence is a forfeiture of all pay.

*Crawford & Lewis v. Boatmen's Trust Co. of Ark., Inc.*, 338 Ark. 679, 686 (1999) (quoting *Silbiger v. Prudence Bonds Corp.*, 180 F.2d 917, 920–21 (2d Cir. 1950) (Hand, J.)). Thus Ms. McDonnough asks this Court to order PPGMR "to disgorge its fees and use those disgorged fees to indemnify the [library system] from any monies it may have to pay as a

result of the instant case," including the fees for the attorney who Ms. McDonnough hired to represent her in this post-judgment motion practice. *See* Doc. 127, ¶ 8.

The Court lacks authority to provide the requested relief in this procedural posture. PPGMR is not a party to this case, nor is its relationship with the Defendants—contractual, fiduciary, or otherwise—the subject of any of the claims or defenses in this matter. In her reply, Ms. McDonnough characterizes her request, for the first time, as one for restitution to remedy unjust enrichment. *See* Doc. 145, ¶ 23. In essence, Ms. McDonnough is attempting to assert a state-law claim in this federal case, against a non-party, and through post-judgment motion practice rather than in a proper pleading such as a third-party complaint, *see* Fed. R. Civ. P. 7(a), 14(a)(1), long after the deadline to add parties or amend pleadings has passed, *see* Doc. 31, § 4. Ms. McDonnough's Motion to Disgorge is DENIED, and the Court makes no findings as to whether PPGMR's relationship with the Defendants it represented in this matter was ever characterized by any conflict of interest.

### C.   Plaintiffs' Motions for Attorney Fees (Docs. 107, 116, 123, 139)

42 U.S.C. § 1988 states that, in a § 1983 action, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." The Supreme Court has made clear that, in the absence of special circumstances, "a district court not merely 'may' but *must* award fees to the prevailing plaintiff." *Indep. Fed'n of Flight Attendants v. Zipes*, 491 U.S. 754, 760–61 (1989) (emphasis in original). This near-mandatory awarding of fees under § 1988 is to ensure "'effective access to the judicial process' for persons with civil rights grievances," and thereby fulfill § 1983's purpose. *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (quoting

9

H.R. Rep. No. 94–1558, p. 1 (1976)).  "Accordingly, a prevailing plaintiff should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust."  *Id.*  (internal quotations and citations omitted).  By providing a mechanism by which attorneys who take on civil rights claims can recover their fees should they prevail, Congress has incentivized the bar to take these cases in the first place.

"[A] plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff."  *Farrar v. Hobby*, 506 U.S. 103, 111–12 (1992).  Here, Plaintiffs are the prevailing party, and Defendants do not challenge that.  Rather, Defendants argue the amount requested is unreasonable.

To calculate a reasonable fee award, courts look to the "lodestar" amount, *i.e.*, "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  *Hensley*, 461 U.S. at 433.  When making this determination, courts may consider the twelve factors identified in *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir. 1974).[2]  But often, these factors "are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate."  *Hensley*, 461 U.S. at 434 n.9.

As noted in Section I of this Opinion and Order, Plaintiffs have filed four separate fee Motions: one immediately following the entry of Judgment in this matter, and then

---

[2] "The twelve factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases."  *Hensley*, 461 U.S. at 430 n.3 (1983) (citing *Johnson*, 488 F.2d at 717–19).

three supplemental Motions for additional attorney fees incurred or arising from the voluminous post-judgment motion practice which followed.  The Court will deal first with Plaintiffs' initial fee Motion, and then with the three supplemental Motions.

Plaintiffs' initial fee Motion asks the Court to award fees based on the following rates and hours:

Requested Fees

| Biller | Requested Hourly Rate | Hours Billed | Billed Amount |
|---|---|---|---|
| Brian Meadors (*attorney*) | $325 | 278.8 | $90,610.00 |
| Terrence Cain (*attorney*) | $325 | 54.67 | $17,767.75 |
| **Total** | | **333.47** | **$108,377.75** |

Defendants make four challenges to this fee request.  First, they challenge the reasonableness of the requested hourly rate.  Then, they argue that there are three separate categories of excessively billed time.

First, regarding the reasonableness of the requested rate, Defendants argue that $325 is too high, and that reasonable rates would instead be $300 for Brian Meadors and $275 for Terrence Cain.  In support of this position, Defendants argue that neither of Plaintiffs' attorneys is a full-time litigator or partner at a law firm, and that neither has "vast experience in First Amendment litigation."  *See* Doc. 127, p. 2.  It is certainly true that neither attorney is currently employed at a law firm, but of course this is not the only way to obtain litigation experience and subject-matter expertise.  Terrence Cain is a tenured law professor who teaches courses on, among other things, constitutional law and federal

civil rights litigation.  *See* Doc. 107-2, ¶ 3.  He has also served as lead appellate counsel in at least 73 cases over the last 22 years.  *See id.* at ¶ 5.  And although Brian Meadors is currently general counsel for a corporation, he has extensive litigation experience including more than 20 jury trials and 60 bench trials taken to verdict.  *See* Doc. 107-3, p. 5.  He also has been published twice on First Amendment issues, and was counsel of record in a previous lawsuit involving a library and the First Amendment.  *See id.* at ¶¶ 4.2.1, 4.8.  Both of these men have the quantity and quality of experience and expertise that would justify charging a premium market rate for their services in this matter, and one certainly cannot dispute that they obtained outstanding results for the clients here: summary judgment and complete injunctive relief in their favor.

Although $325 is likely higher than the premium market rate for litigators in Crawford County, Arkansas, this Court has nevertheless found that to be an appropriate rate in situations where plaintiffs had to search outside their geographic area to find counsel with significant subject-matter expertise and experience litigating First Amendment issues.  *See, e.g.*, *Human Rights Defense Center v. Baxter Cnty., Ark.*, 2023 WL 7404236, at *8–*9 (W.D. Ark. Oct. 30, 2023) (Brooks, J.); *see also Snider v. City of Cape Girardeau*, 752 F.3d 1149, 1159–60 (8th Cir. 2014) ("In a case where the plaintiff does not use local counsel, the district court is not limited to the local hourly rate, if the plaintiff has shown that, in spite of his diligent, good faith efforts, he was unable to find local counsel able and willing to take the case.").  Likewise, the Court finds so here.

As for the number of hours billed, Defendants contend that Plaintiffs should not be awarded attorney fees for three categories of billed time: (1) 7.8 of the 10.8 hours that Mr. Meadors billed for assisting Dr. Daniel N. Joudrey with the composition of his expert

report; (2) 10.3 hours that Plaintiffs' counsel billed for work involving a related but separate lawsuit: *Fayetteville Public Library et al. v. Crawford Cnty., Ark. et al.*, Case No. 5:23-cv-5086 (W.D. Ark.) ("the Act 372 case"); and (3) 36.31 hours that Plaintiffs' counsel billed for work on pre-judgment filings that were unsuccessful.  Regarding the time billed for expert assistance, the Court finds that this figure to be reasonable and not excessive, especially considering that Dr. Joudrey's opinions were eventually the target of an unsuccessful (Doc.102) Motion to Exclude (Doc. 60) under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

As for time spent on the Act 372 case, Professor Cain billed 5.0 hours for traveling to and attending the Act 372 preliminary injunction hearing, and Mr. Meadors billed 5.3 hours for things like reviewing filings and orders in that case and meeting with counsel in that case.  The Court finds that these hours are also reasonable and not excessive, because the Act 372 case—which was litigated in this Court before the undersigned—was closely related to the instant matter.  Both were cases involving libraries and the First Amendment, in which Crawford County was a defendant and in which Crawford County was represented by PPGMR.  It was reasonable and prudent for Plaintiffs' counsel in the instant case to monitor and stay abreast of developments in the Act 372 case so as to be aware of any implications that one might have for the other.

And as for time spent drafting filings that were ultimately unsuccessful, the general rule is that such fees are recoverable so long as the issues on which the plaintiff lost are related to those on which the plaintiff won.  *See Jenkins by Jenkins v. State of Mo.*, 127 F.3d 709, 716.  "If the plaintiff has won excellent results, he is entitled to a fully compensatory fee award, which will normally include time spent on related matters on

13

which he did not win." *Id.*  Here, all of Plaintiffs' unsuccessful pre-judgment filings were related to the issues on which Plaintiffs ultimately won; and, as already noted, Plaintiffs' victory was essentially complete, in that they received full injunctive relief on summary judgment.  The Court has reviewed all hours billed and submitted for review by Plaintiffs' counsel in this matter, and finds them to be reasonable, not excessive, and fully compensable.

Plaintiffs' initial fee Motion also seeks to recover $4,600.56 in costs.  Defendants "take no issue with Plaintiffs' bill of costs," (Doc. 127, p. 8), and neither does the Court.  Therefore, Plaintiffs' initial fee Motion will be GRANTED in full, and Plaintiffs will be awarded $108,377.75 in attorney fees and $4,600.56 in costs, for a total of $112,978.31.

However, Plaintiffs' three supplemental fee Motions fare less well.  Plaintiffs' first (Doc. 116) and second (Doc. 123) supplemental fee Motions seek to recover fees for time spent drafting materials in support of their unsuccessful post-judgment Motion to Amend the Judgment (Doc. 114), which was denied in Subsection II.A.  The Eighth Circuit provides the following guidance for such requests:

> When plaintiff initially prevails and obtains injunctive relief in [§ 1983] litigation, some types of post-judgment activities are generally compensable as necessary adjuncts to the initial litigation, whereas other types of activities are more like a new, separate lawsuit and require a fee determination independent of the underlying case.  Reasonable fees for defending the injunction from attack are compensable, but a prevailing party who aggressively seeks a greater victory and fails is entitled to a proportionally lesser fee award than a prevailing party who merely defends his victory, even if the defense is less than completely successful.  Work that is more like a new, separate lawsuit requires a fresh determination of entitled to fees.

*El-Tabech v. Clarke*, 616 F.3d 834, 841–42 (8th Cir. 2010) (internal quotation marks, citations, and alterations omitted).

14

As the Court explained in its discussion above *en route* to denying Plaintiffs' Motion to Amend, Plaintiffs' Motion was "not asking for the injunction to be enforced on its own terms but rather for its language to be amended—and expanded." *Supra*, p. 6. As such, the Motion was not "defending the injunction from attack," but rather was "aggressively seek[ing] a greater victory and fail[ed]." *El-Tabech*, 616 F.3d at 841–42. Therefore, Plaintiffs are not entitled to recover their attorney fees for that post-judgment motion practice, so their first (Doc. 116) and second (Doc. 123) supplemental fee Motions will be DENIED.

Finally, Plaintiffs' third supplemental fee Motion (Doc. 140) makes three separate requests: (1) an attorney fee award for 10.0 hours that Mr. Meadors spent working on Plaintiffs' Reply in support of their initial fee Motion and on their third supplemental fee Motion; (2) for a "fee enhancement" of pre-judgment interest to compensate for the delay in payment that the post-judgment motion practice caused; and (3) for post-judgment interest to begin running from the date that the original Judgment was entered (September 30, 2024, *see* Doc. 106), rather than from today's date when the Amended Judgment will be entered awarding Plaintiffs attorney fees.

The Court will deny Plaintiffs' first request because Mr. Meadors's affidavit in support of this Motion does not itemize the time spent on the separate tasks for which he seeks compensation, which prevents this Court from determining whether the time spent for each task was reasonable. The Court will deny Plaintiffs' second request because the delay in an award of attorney fees in this matter was due in no small part to Plaintiffs' unsuccessful post-judgment motion practice, which turned what should have been a fairly

15

straightforward attorney-fee ruling into the complicated morass that has occupied this entire Opinion and Order.

Plaintiffs' third request requires a bit more discussion. Generally, "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court," and "[s]uch interest shall be calculated from the date of the entry of the judgment." 28 U.S.C. § 1961(a). Plaintiffs cite the case of *Jenkins by Agyei v. State of Missouri* for the following proposition:

> If a judgment is rendered that does not mention the right to attorneys' fees, and the prevailing party is unconditionally entitled to such fees by statutory right, interest will accrue from the date of judgment. If, however, judgment is rendered without mention of attorneys' fees, and the allowance of fees is within the discretion of the court, interest will accrue only from the date the court recognizes the right to such fees in a judgment. . . . [I]nterest accrues from the date that the party becomes unconditionally entitled to fees, even if those fees are not yet quantified. . . . [I]nterest on an attorney fee award . . . runs from the date of the judgment establishing the right to the award, not the date of the judgment establishing its quantum.

931 F.2d 1273, 1275–76 (8th Cir. 1991) (quoting *Copper Liquor, Inc. v. Adolph Coors Co.*, 701 F.2d 542, 545 (5th Cir. 1983)).

Plaintiffs contend that "[i]n a successful § 1983 case like this one, Plaintiffs' attorney's fee award is not discretionary, and this is confirmed by *Jenkins*, *supra*, which computed post-judgment interest from the time of judgment, not fee quantification." (Doc. 140, ¶ 8). This is not correct. First, and most importantly, the relevant statute explicitly states that in a § 1983 action, "the court, *in its discretion*, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988 (emphasis added). Now it is certainly true that, as this Court noted above, the Supreme Court has clarified that, absent special circumstances, "a district court not merely 'may' but *must* award fees to the prevailing plaintiff." *Indep. Fed'n of Flight*

16

*Attendants v. Zipes*, 491 U.S. 754, 760–61 (1989) (emphasis in original). And indeed, that prompted this very Opinion and Order to refer above to an award of fees here as "near-mandatory." But the critical words here are "near" and "special circumstances." To quote the Supreme Court again: "a prevailing plaintiff [in a § 1983 case] should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (quoting S. Rep. No. 94–1011, p. 4 (1976)) (internal quotations and citations omitted). In other words, a district court's discretion is cabined here, but it is not nonexistent; the Court must still determine, in its discretion, whether special circumstances exist which would make an award of fees unjust. As such, post-judgment interest properly runs not from the date when Judgment was entered in Plaintiffs' favor which did not mention any right to attorney fees, but rather from the date when a judgment is entered recognizing the right to such fees, regardless of whether it quantifies those fees. And that date is today.

*Jenkins by Agyei* does not differ in this regard. The Eighth Circuit ultimately held in that case that the prevailing "class is entitled to post-judgment interest on its attorneys' fees accruing from the February 24, 1986, order *declaring the class's entitlement to those fees*." 931 F.2d at 1277. Therefore, Plaintiffs' third supplemental fee Motion will be DENIED.

### D. PPGMR's Motion to Withdraw (Doc. 135)

The Court turns finally to PPGMR's Motion to Withdraw as Counsel of Record (Doc. 135). PPGMR states that it should be permitted to withdraw as counsel because "irreconcilable differences have arisen between Defendants which have materially impacted PPGMR's ability to represent Defendants in this case." *Id.* at ¶ 1. Those

17

differences, of course, have already been extensively discussed above in Subsections II.A and II.B of this Opinion and Order. PPGMR further states that it "has given notice to Defendants and their counsel of PPGMR's intent to withdraw," and "requests that the Crawford County Library Board Defendants be given ample time to retain new counsel." *Id*. On the same day that PPGMR filed its Motion to Withdraw, Gentry C. Wahlmeier entered his appearance as counsel for all Defendants in this matter except Ms. McConnough and Library Board Members Keith Pigg, Tammara Hamby, Kalein Schaper, Kayla Rich, and Robby Dyer. *See* Doc. 133. Also that same day, the Court granted Ms. McDonnough's Motion to Substitute Attorney, permitting attorney Joshua W. Bugeja to replace PPGMR as counsel of record for Ms. McDonnough in this matter. *See* Doc. 134. However, to date no new attorney has entered his or her appearance for Defendants Pigg, Hamby, Schaper, Rich and Dyer ("the Library Board Defendants").

It seems likely to the Court that PPGMR's Motion is now moot, given that this Opinion and Order resolves all other pending motions and no further motion practice is anticipated. But if the Court is mistaken on the latter point and more filings in fact loom on the horizon, then the Court is unpersuaded that the Library Board Defendants would not be prejudiced by granting PPGMR's Motion, given that no attorney has entered any appearance for them in the more than four months that have passed since PPGMR filed its Motion. Therefore, PPGMR's Motion to Withdraw will be DENIED, but without prejudice to refiling if PPGMR believes circumstances warrant it.

### III. CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion to Amend (Doc. 114) and Separate Defendant McDonnough's Motions to Strike (Doc. 128) and Disgorge (Doc.

136), are all **DENIED**; Plaintiffs' Motion for Costs & Attorney Fees (Doc. 107) is **GRANTED**; Plaintiffs' Supplemental (Doc. 116), Second Supplemental (Doc. 123), and Third Supplemental (Doc. 139) Motions for Attorney Fees are all **DENIED**; and PPGMR's Motion to Withdraw (Doc. 135) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants shall reimburse Plaintiffs their reasonable attorney fees in the total amount of **$108,377.75** and costs in the amount of **$4,600.56**, for a total award of **$112,978.31**. An Amended Judgment reflecting this award will be filed contemporaneously with this Opinion and Order.

**IT IS SO ORDERED** this 16th day of April, 2025.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE